## MATTER OF FONG

### In VISA PETITION Proceedings

### A-13264113

### *Decided by Board April 6, 1964*

An adoptive brother is eligible for preference quota status under section 203(a)(4), Immigration and Nationality Act, as amended, if he qualifies as an adopted child of the same parents of the petitioner. (*Matter of M—*, 6 I. & N. Dec. 180, superseded.)

The case comes forward on appeal from the order of the District Director, Boston District, dated December 13, 1963, denying the visa petition for the reason that *Matter of M—*, 6 I. & N. Dec. 180, holds that brothers and sisters through adoption are not brothers and sisters within the meaning of section 203(a)(4) of the Immigration and Nationality Act.

The petitioner, a native of China and a naturalized citizen of the United States, 35 years old, female, seeks preference status under section 203(a)(4) of the Immigration and Nationality Act on behalf of her adopted brother, a native and citizen of China, born January 31, 1949 (CR38-1-2). Section 203(a)(4) provides for preference quota status on behalf of a brother or sister of a citizen of the United States.

An office memorandum dated December 13, 1963, accompanies the denial of the visa petition. The memorandum reflects that the petitioner applied for admission to the United States at Boston, Massachusetts on March 26, 1952; that her father Fong Tan Yow, given name, Fong Gong Wah, marriage name, was then living in the Philippine Islands and her mother Jee (Gee) (Shee) was living in Mar Det Village; that she did not have any brothers or sisters, either natural or adopted; that she had only one son, Chin Doo Taw, born CR 38-4-2 (April 29, 1949) in Chew Jung Village and living with her mother in Mar Det Village. Subsequently, the petitioner submitted visa petitions for her mother, Fong Wai Lan also known as Gee Wai Lan, her daughter, Chin King Toy, and an adopted brother, Fong Sui Kee. In support of these visa petitions she submitted her own affidavit, and an affidavit of her husband and a copy of an adoption agreement to

substantiate the claimed relationships. Inasmuch as this was the first time she had mentioned she had a daughter and an adopted brother, the petitioner was interviewed under oath on December 12, 1963.

She admitted that she never had a son by the name of Chin Doo Taw but merely showed him on the record because everyone else was doing the same thing. She also testified that she had two natural sisters and one adopted brother. Her explanation for not previously reporting their existence was that since they were residing on the mainland of China when she came to the United States she thought that if she disclosed their existence some harm might come to them. The visa petitions filed in behalf of the petitioner's mother and daughter were approved on condition that the blood typing of the petitioner and her husband and the beneficiary be found compatible. However, it was recommended that the visa petition filed on behalf of the adopted brother, Fong Sui Kee, be denied on the basis of the decision in *Matter of M—*, 6 I. & N. Dec. 180.

It is noted that *Matter of M—*, *supra*, was decided on June 23, 1954, and held that brothers and sisters through adoption were not "brothers" or "sisters" within the meaning of section 203(a)(4) of the Immigration and Nationality Act and were not eligible for preference quota status under that section. However, subsequently there was enacted the Act of September 11, 1957 (71 Stat. 639, 8 U.S.C.A. 1101, P.L. 85–316 (85th Cong., 1st Sess.) S. 2792) which provided in section 2 thereof an addition to section 101(b)(1) of the Immigration and Nationality Act consisting of subparagraph (E) to include in the definition of the term "child" a child adopted while under the age of 14 years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years.

Senate Report No. 1057 (85th Cong., 1st Sess.) to accompany S. 2792, stated that at present the term "child" does not include adopted children and it is believed the proposed amendment is desirable to prevent hardship in cases where the child is chargeable to a heavily oversubscribed quota and would not otherwise be able to accompany his adoptive parents. Adequate safeguards were included to prevent abuses. Presumably, this meant the limitation to adoption while under 14 years of age and the requirement of custody and residence thereafter for two years by the adopting parent or parents as well as the termination of any immigration right, privilege or status as to the natural parent of such adopted child.

The amendment of September 11, 1957, equated the status of a properly adopted child to that of a "child" as defined in section 101(b)(1) for immigration purposes.[1] In view of the enactment of this amen-

---

[1] *Matter of A—*, 8 I. & N. Dec. 242.

datory statute in 1957 subsequent to our decision in *Matter of M—*, 6 I. & N. Dec. 180 (1954), and the recognition therein for the first time of an adopted child as a "child" it is believed that the matter should be reexamined in view of the legislative intent and history to determine whether an adopted brother or sister is included within the term "brothers" or "sisters."

The term "brothers" or "sisters" as used in section 203(a)(4) of the Immigration and Nationality Act is not defined and recourse may be had to the statutory construction adopted to similar words in other legislation to determine whether adopted brothers and sisters are included within that terminology.[2] Adoption is usually regarded as creating the same relationship between the adoptive parent and the adopted child as between a natural parent and his child.[3] By statute, in most jurisdictions, but not a common law, a person may adopt a child; and in such a case, unless there are statutory provisions to the contrary, the rights, duties and obligations arising from the artificial relationship will be substantially the same as those arising from the natural relation of parent and child. Where the artificial relation of parent and child is created by adoption under the statute, the relationship will be the express provisions of the statute, and even independently of such provisions, give rise to substantially the same rights, duties, and liabilities as arise out of the natural relationship.[4]

In the case of *Woodward v. U.S.*, 341 U.S. 112 (1951) the Supreme Court was considering an appeal from a decision of the Court of Appeals for the Eighth Circuit (185 F. 2d 134) which had held that an adopted brother was not a permissible beneficiary under section 602(g) of the National Service Life Insurance Act of 1940.[5] The Court of Appeals for the Third Circuit has reached a directly contrary conclusion under similar circumstances in *Carpenter v. U.S.*, 168 F. 2d 369 (1948). The grant of certiorari by the Supreme Court was limited to the question of whether a daughter by adoption is within the permissible class of beneficiaries under section 602(g) of the National Service Life Insurance Act of 1940. The Court held (p. 113) that "The short of the matter is that Congress has not expressed itself in regard to the question before us. In resolving the conflict of de-

___

[2] *Matter of R—*, 5 I. & N. Dec. 438 (1953) concluded that the term "sons" or "daughters" included adopted sons or daughters within the provision of section 203(a)(4) but that holding, which involved a beneficiary who was 24 years old at the time of his adoption, is no longer applicable because the present definition in section 101(b)(1)(E) defines "adopted child" as one adopted while under the age of 14 years.

[3] 2 CJS 446.

[4] Madden, J. W., Persons and Domestic Relations 354 (1931).

[5] This section provided that insurance shall be payable only to a widow, widower, child, parent, brother, or sister of the insured.

cisions, we must determine whether the word "brother," as used in this Federal statute, restricts the policy holder's choice of beneficiaries to brothers of the blood. We are persuaded by the policy against drawing such a distinction in the family relationship. Contemporaneous legal treatment of adopted children as though born into the family is a manifestation of that policy. * * * Consequently, we hold that a brother by adoption is a permissible beneficiary under section 602(g) of the National Service Life Insurance Act of 1940." [6]

Section 2 of the Act of September 11, 1957, which added subparagraph (E) to the definition of the term "child" in section 101 (b)(1) of the Immigration and Nationality Act placed Congressional approval on a construction which would adopt the prevailing view that adoption is usually regarded as creating the same relationship between the adoptive parent and adopted child as between a natural parent and a natural child. Although there has been some holdings to the contrary, the Supreme Court in the case of *Woodward* v. *U.S.*, 341 U.S. 112 (1951) settled the divergence in the lower courts as to whether a brother or sister by adoption is a "brother" or a "sister" within the meaning of the term as used in the National Service Life Insurance Act in the affirmative. In the light of the legislative history and purpose of the amendatory legislation of the Act of September 11, 1957, we are convinced that there has been enunciated a Congressional policy against drawing any distinction between an adopted child or adopted brother and sister and "child" or "brother" and "sister." We regard *Matter of M—*, 6 I. & N. Dec. 180, as no longer applicable.

In the instant case there is evidence to establish that the beneficiary, who was born on January 31, 1949, was adopted either on March 1, 1949, as testified by the petitioner, or on July 19, 1949, as evidenced by the adoption agreement. In any event the beneficiary appears to qualify as an adopted child of the same parents of the petitioner and is considered an adopted brother. As such, he qualifies for eligibility for a preference quota visa under section 203(a)(4) of the Immigration and Nationality Act. The appeal will be sustained.

ORDER: It is ordered that the appeal be sustained and that the visa petition be approved for preference quota status under section 203(a)(4) of the Immigration and Nationality Act on behalf of the beneficiary.

---

[6] Cited with approval in *Thomas* v. *United States*, 189 F. 2d 495, 504 (6th Cir., (1951); *Berryhill* v. *United States*, 199 F. 2d 217, 218 (6th Cir., 1952); *U.S.* v. *Rock*, 200 F. 2d 357, 358 (D.C. Cir., 1952).