## MATTER OF CHAN

### In Visa Petition Proceedings

#### A-13924709

*Decided by Board June 16, 1965*

Since acts of human kindness referable to an undertaking to rear and educate a helpless child do not alone prove an agreement to adopt, nor is standing *in loco parentis* the equivalent of adoption, the mere fact that the petitioning grandfather may have stood *in loco parentis* to the beneficiary grandson, following the death of the latter's father in China when the beneficiary was only 17 months of age, is insufficient to effect adoption in accordance with the applicable provisions of the Chinese Civil Code since in order to be recognized as an adoption it is necessary that the adoptive parents have brought up the child intending to adopt it.

The case comes forward on appeal from the order of the District Director, New York District, dated March 17, 1965 for the reason that the beneficiary, an alleged adopted child, does not qualify under the definition of "child" within the provisions of section 101(b)(1)(E) of the Immigration and Nationality Act and that satisfactory evidence has not been presented that he was legally adopted. The notice of denial further sets forth that the evidence establishes the true son and his wife lived in the same household with his wife and other son from the time of their marriage until 1938 when the beneficiary, his grandson, was born; after the death of the beneficiary's father in 1939, the petitioner's daughter-in-law and grandson continued to live in the same household until the death of the petitioner's wife in 1942; thereafter his daughter-in-law, his grandson and his other son continued to live in the same household until this other son came to the United States in 1961 and the daughter-in-law and her son, the beneficiary, are presently living together in the same household. There is no evidence that the petitioner ever contemplated the adoption of his grandson either before his seventh birthday or at any time thereafter.

The visa petition was filed by King Chin, a native born citizen of the United States, 68 years old, seeking preference quota status on

behalf of the beneficiary, a native and citizen of China, 27 years old, male. The beneficiary is alleged to be the adopted son of the petitioner.

In support of the visa petition there has been submitted a statutory declaration executed December 14, 1964 at Hong Kong by Ng Choi Hang setting forth that she is the blood mother of the beneficiary who was born on April 6, 1938 and that his father was Chin Bing Yu who died on September 5, 1939 when the beneficiary was only 17 months of age. Her husband was the blood son of the petitioner. The beneficiary is, therefore, the grandson of the petitioner. After her marriage Ng Choi Hang resided with her husband in the ancestral home of her father-in-law, the petitioner, together with her mother-in-law, Dong Toy Kee, the petitioner's wife, who died in 1942. Since the death of her husband, the affiant and her son have been continuously supported by the petitioner and since her husband's death, the beneficiary, from the time of his father's death until the death of his grandmother, resided with his grandmother who was his custodian and acted as his adoptive mother until the time of her death. From the time of her husband's death her son has been regarded as the adopted son of his paternal grandparents.

There has also been submitted an affidavit by Gwon Bor Chin, 37 years old, the blood son of the petitioner and the brother of Bing Yu Chin, the blood father of the beneficiary. The affiant states that he is informed, believes and understands that the beneficiary is his adoptive brother under the laws of the Republic of China. The date and basis of such information, belief and understanding is not set forth. The immigration record of the affiant is not included and it is not known whether it is stated therein that the beneficiary was his brother.

A sworn statement was taken from the petitioner before an immigration officer on March 3, 1965. He testified he was married on CR 9-12-20 to Dong Toy Kee and that they had two sons: Chin Bing, born CR 10-9-10 who died in 1941; and Chin Goon Bor, born CR 16-9-3, now in the United States, having been admitted in February 1961 as the son of a citizen. The petitioner stated that his deceased son married Ng Toy Hong about CR 25th or 26th year and they had one son, Chin Ming Hang, the beneficiary. He testified that while his son Chin Bing You was alive, he lived together with his wife and son, Chin Ming Hang, and the petitioner's wife until she passed away in 1942, and his second son, Chin Goon Bor. He learned about the birth of his grandson in CR 27 or 28 and he learned about the death of his older son about a week after the event. When asked to explain the circumstances under which his grandson

was adopted by his wife, the petitioner stated there was no particular procedure in adopting his grandson as his son, it is understood that he is the petitioner's grandson and after his father's death he has been sending money to support him all of the time; it is different from any case of adoption. When asked why it was necessary for him to adopt the grandson when his mother was still alive and living in the same household he stated that all that he wanted to do was to bring him to the United States so that he can take care of him since he has no father and he does not care whether you call him his adopted son or anything else. He stated there was no need to go through any adoption proceeding since the beneficiary is his true blood grandson and he wanted to bring him to the United States. When asked whether his wife had ever written to him as to whether she would adopt the grandson legally or whether he had ever written his wife in China asking her to adopt his grandson legally he replied he did not understand the necessity of talking about those things because there is no doubt that the child is his grandson. The petitioner agreed with the statutory declaration executed by his daughter-in-law that his son probably died on September 5, 1939 as indicated by her and that his wife died in 1942. The petitioner stated that since he last returned from China in 1928 he has kept all receipts for remittances he has sent his family in China and the attorney indicated that this evidence is in the files of the American Consulate at Hong Kong.

The petitioner has filed an affidavit, which is in essence a brief, as well as a separate brief filed by counsel. The affidavit sets forth the conception of Chinese family life in the rural areas of China and claims that a de facto adoption within the concept of Article 1079 of the Chinese Civil Code exists in the present case. In his brief counsel cites a number of cases to show that the trend of administrative and judicial decisions with regard to "children" is a liberal one and that the legislation is remedial in nature, enacted to preserve and keep together bona fide family relationships, realizing that to do otherwise would cause undue hardship. He urges that the word "adopt" be given its ordinary simple dictionary definition.

Article 1079 of the Chinese Civil Code specifies that an adoption must be effected in writing, unless the person to be adopted has been brought up as a child of the adopter since infancy. Also pertinent are the provisions of Article 1072 which provide that where a person adopts a child of another as his own child, the adopter is called the adoptive father or adoptive mother and the person adopted is called adopted son or adopted daughter; Article 1074 which provides that where a married person adopts a child, he must do so jointly with

his spouse; and Article 1078 which provides that an adopted child assumes the surname of the adopter. In order to be recognized as an adoption, it is necessary that the adoptive parents have brought up the child intending to adopt it. The mere fact of bringing up the child is not sufficient.[1]

The term "child" is defined in section 101(b)(1) to mean a legitimate child, a stepchild, a legitimated child, an illegitimate child in relation to its mother, an adopted child, and an eligible orphan. The terms are all defined and connote a legal status or relationship and are words of art as distinguished from words in ordinary usage.

Adoption is a juridical act creating between two persons certain relations, purely civil, of paternity and affiliation.[2] Adoption in legal contemplation is the act by which the parties thereto establish the relationship of parent and child between persons so related by nature.[3] Acts of human kindness referable to an undertaking to rear and educate a helpless child do not prove an agreement to adopt; nor is loco parentis the equivalent of adoption.[4]

The petitioner has the burden of establishing the existence of the relationship upon which is predicated the benefit he seeks under the immigration laws on behalf of the beneficiary. The beneficiary in the instant case is the petitioner's grandson, whose father is the petitioner's deceased son. The beneficiary's mother continued to reside in the same household together with another son until this other son came to the United States in 1961 and the beneficiary and his mother are presently living together in the same household. The petitioner in his sworn statement of March 3, 1965 did not state that his grandson had been adopted by his wife, the beneficiary's grandmother or that he ever consented to such adoption or that there was ever an adoption procedure. He stated there was no need to go through an adoption proceeding because the beneficiary is his true blood grandson and that after his father's death he had been sending money to support him all the time and it is different from any case of adoption.

As far as the evidence establishes, there was never an actual intent to adopt the child but the grandfather merely contributed to the support of the beneficiary who resided with and at all times was within the custody of his own mother. The evidence fails to establish an intent to adopt as distinguished from merely supporting the child.

[1] M. H. Van Der Valk, *An Outline of Modern Chinese Family Law* (1939), 135 citing Dec. 1935–4823; *Thery* 1167; *Ssu-fa-kung-pao* 163.
[2] *Bouvier's Law Dictionary* (3rd Revision).
[3] 2 *Corpus Juris Secundum* 867.
[4] *Garcia* v. *Saenz et al.*, 242 S.W. 2d 230 (C.A. Texas, 1951).

It has not been established that the requirements of the Chinese Civil Code relating to adoption have been complied with by the production of evidence relating thereto. When the term "child" was defined as meaning an adopted child, it envisioned a legal status or concept of adoption which has not been established in this case. The mere fact that the petitioner may stand in loco parentis to the beneficiary is not the equivalent of adoption. We have examined the case cited by counsel relating to equitable adoption but do not find it relevant.[6] Upon consideration of the entire record, we conclude that the petitioner has not borne the burden of establishing that the beneficiary is his adopted child and, therefore, the beneficiary is not eligible for preference quota status as the adopted son of the petitioner.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

[6] *Davis* v. *Celebrezze*, 239 F. Supp. 608.