## MATTER OF CHIN

### In Visa Petition Proceedings

### A-10628751

### *Decided by Board March 29, 1967*

Where beneficiary and her "husband," natives and citizens of China, while in the United States acquired petitioner, a native-born U.S. citizen, from his natural parents in San Francisco, California at the time of his birth; had his birth registered, listing beneficiary as the blood mother; brought up petitioner since infancy, taking him to China with them in 1932 (when he was under age 7) where he continued to live with them until he returned to this country in 1946, a valid adoption occurred under the applicable Chinese law of the domicile of the adoptive parents when contracted in 1927 and such adoption remained valid under the current Family Relations Law of the Civil Code of the Republic of China and, therefore, is valid under the law of the State of California; hence, petitioner's visa petition according beneficiary status as his mother is revalidated.

ON BEHALF OF PETITIONER: Sanford A. Peyser, Esquire
401 Broadway
New York, New York 10013

Jack Wasserman, Esquire
Warner Building
Washington, D.C. 20004
(Co-counsel)

The case comes forward pursuant to certification by the District Director, New York District, of his decision dated March 1, 1967 finding that there was a valid adoption created according to Chinese law which California would be compelled to recognize; holding that the denial of the motion to approve the revalidation of the petition be set aside; that the petition be revalidated.

The petitioner, a native-born citizen of the United States, born September 30, 1927, filed a visa petition on February 25, 1953 seeking preference quota status on behalf of his mother, a native and citizen of China, born July 2, 1901. The petition was approved for second preference status under then existing law on April 17, 1953.

The case was last before us on April 12, 1966 on appeal from the

denial on December 8, 1965 of the petitioner's motion to reopen the proceedings subsequent to the denial of his request for revalidation of the visa petition. A short summary of the prior action of this Board and the present action of the District Director will be given at this point. On January 11, 1955, the beneficiary executed an affidavit before the American Consulate General of Hong Kong in which she stated that she was not the natural mother of the petitioner but that she had purchased the petitioner in San Francisco from his natural parents at the time of his birth and had registered his birth there, listing herself as the blood mother. (The beneficiary was actually the concubine of her "husband" who was regarded by the petitioner as his natural father.) They remained in the United States until 1933 when the beneficiary accompanied his parents to China. The record contains no indication that any action was ever taken on the approved visa petition.

On March 8, 1964, the petitioner requested that the approved petition be revalidated claiming that he had learned about July or August 1963 that he was an adopted child and that he had lived with the beneficiary both in the United States and China from his birth until 1946 when he returned to the United States. On August 19, 1965, the District Director denied the request for the reason that the beneficiary was not of the relationship to the petitioner as specified in the approved petition and that she was not entitled to a preference as the mother of a citizen of the United States. Thereafter, the petitioner filed a motion to reopen contending that the beneficiary should qualify under sections 101(b)(1) and (b)(2) of the Immigration and Nationality Act as an adopted mother under the law of China. This motion was again denied by the District Director on December 8, 1965, holding that the continued cohabitation of the "family" in China based upon a fraudulent registration of the petitioner by the beneficiary and her husband as an issue of their marriage prevented the true facts from being known; that the Chinese Civil Code could not be utilized to condone a fraudulent adoption which was perpetrated in the United States.

On appeal, this Board on April 12, 1966 held that the issue in the case was whether or not the claimed relationship between the petitioner and the beneficiary constituted an adoption; that the record, as it then stood, was insufficient evidence of such relationship; remanded the case to afford the petitioner an opportunity to introduce evidence as to the existence of an adoption between the beneficiary and the petitioner; and directed that the decision of the District Director be certified to this Board.

The petitioner gave a sworn statement on August 15, 1966 and testi-

fied as to the relationship between himself and the beneficiary and that he first became aware that his supposed parents were not his true parents but were adopted parents in July or August 1963.

Evidence as to the Chinese law relating to adoptions was submitted in a memorandum dated July 8, 1966 by Dr. Fu-shun Lin, Assistant Professor of Chinese Law, Columbia University, New York City, whose qualifications as an expert on Chinese law are conceded. This memorandum is attached hereto and designated *Appendix I* and made a part hereof. The memorandum sets out the law relating to adoption applicable in Kwangtung in 1927 when the petitioner was adopted and holds that (1) the adoption was valid between Chin Hing Shang (Henry S. Chin), the petitioner, and his adopted mother, Chin Jan in 1927; (2) the adoption was valid between the petitioner and his adoptive father, Yu Che Chin, in 1927 for the same reasons; (3) inasmuch as the present adoption was valid under the applicable law of China in 1927, it remained valid after the coming into force of the Family Relations Law of the Civil Code of the Republic of China on May 5, 1931 and that the requirement of an adoption in writing does not apply to a case where the adopted child has been brought up by as a child of the adopting parents since infancy (Article 1079); (4) The Treaty of Peace, Friendship, and Commerce between China and the United States, signed at Tientsin on June 19, 1858 does not contain any provision which may be considered as having prohibited or in any way restricted an adoption of a child of United States citizenship by Chinese adopting parents in the United States, the validity of which is otherwise recognized by the laws of the United States and China, respectively. Professor Fu-shun Lin concludes that the adoption of the petitioner by the adoptive parents in 1927 was valid under the Chinese law applicable in that year in Kwangtung, China, the adopting father's domicile at the time of the adoption in question; and it has been valid since then and has remained so after the coming into force of the current Family Relations Law of the Civil Code of the Republic of China.

In answer to an inquiry by the District Director, the Chief Legal Officer, Department of Social Welfare, Sacramento, California in a letter dated February 3, 1967 in a reply which was generally inconclusive and equivocal, did however state that if all the local conditions for a valid adoption in China were met, California would be compelled by law to recognize the decree (Code of Civil Procedure, section 1915).

We conclude therefore that there was a valid adoption in this case in 1927 either under the laws and regulations of the Great Ching Empire or under the Chinese Civil Code, inasmuch as it appears the petitioner returned to China with his adoptive parents in 1933 when

he was under seven years of age. *Matter of Lau,* 10 I. & N. Dec. 597. The adoption, since it is valid under Chinese law, would be recognized in California. The necessary relationship of adoptive child and adoptive parents has been established and the revalidation of visa petition was proper. The question of the admissibility of the beneficiary under the immigration laws is an issue that is not before us in these proceedings.

**ORDER:** It is ordered that the order of the District Director approving the visa petition be and the same is hereby affirmed.

## APPENDIX I

**I. The Chinese law relating to adoption applicable in Kwangtung in 1927.**

The Chinese law relating to adoption applicable in entire China—including Kwangtung Province—was that part of law contained in *Ta Ching Lu Li i.e.,* the Laws and Regulations of the Great Ching Empire. Although *Ta Ching Lu Li* was a general code of laws enacted during the reign of the Ching Dynasty, and the last version of it was promulgated in the eighth year of T'ung Chih (1869), a substantial part of that code was retained by the Republican Government to be effective during the years 1912 through 1931, that is, from the beginning of the Republic to the coming into force of the Family Relations Law of the Civil Code.

This revalidation was effected by the following decree issued by the Provisional President of the Republic on March 11, 1912 (the first year of the Republic):

Pending the enactment and promulgation of laws and regulations of the Republic, all laws, regulations, and the Provisional Criminal Code effective in the past shall be temporarily applied and observed, except for those provisions thereof which are incompatible with the Republican State system and, therefore, should become invalid.[1]

The relevant provisions relating to adoption contained in *Ta Ching Lu Li* may be summarized as following:

(1) There are two kinds of adoption with different legal implications: one is the adoption of somebody else's male child for the purpose of instituting him as an heir of the adopting parents, and the other is the adoption of somebody else's child, whether male or female, without intending to institute it as an heir of the adopting parents.

(2) With regard to the first kind of adoption, the *Lü Li* provided a number of restrictions. Among the important ones were that the child to be adopted must be male and must come from the same kindred, and that, even from the same kindred, the order of seniors and juniors in the generations of the family must be maintained.

---

[1] See Yang, Yu-chiung, *Chin-tai Chung-kuo Li-fa Shih* (The Legislative History of Modern China), Shanghai, 1936, at p. 101.

243

(3) With regard to the second kind of adoption, the *Lü Li* did not require that the adopted child must be male or that he must come from the same kindred. One may adopt a child under three years of age who was abandoned and let it assume the surname of the adopting parents. If the child was not abandoned, the consent of the natural parents was required, but no written form was required.[2]

The above provisions of *Ta Ching Lü Li* was persistently upheld by the Supreme Court of the Republic in Peking (Ta Li Yuan) throughout the period between the beginning of the Republic and the coming into force of the present Civil Code in 1931.

In a judgment rendered in 1915, the Supreme Court held that "Although one who has a natural-born child may not institute another person as his heir, to adopt another person as an adopted child (which is also called *i tze*) is not prohibited by the law."[3]

*A fortiori,* one who does not have any natural-born child of his own was allowed by the law to adopt another person as his adopted child, even though the latter was of different surname, that is, from a different kindred.

In another judgment rendered on September 4, 1916, the Supreme Court further held that "an abandoned child under three years of age may assume the family name of his foster family," and that "if there is no son in that family, it is allowed to institute it as an heir."[4]

### II. Questions of law relevant to the present case.

(1) Was there a valid adoption of Chin Hing Shang (Henry S. Chin) by Chin Jan in 1927?

Chin Hing Shang was adopted by Chin Jan and her husband, Yu Shee Chin, as their adopted son shortly after he was born in 1927. Since the present adoption was of the second kind mentioned above, *i.e.*, one without intended for instituting him as an heir, there is no question that it was allowed by the Chinese law applicable in Kwangtung in 1927, as described above. Moreover, under the decision of the Supreme Court of Peking of September 4, 1916, referred to above, the present

---

[2] See the English translation of *Ta Ching Lü Li* in Jamieson, George, *Chinese Family and Commercial Law*, Shanghai, Kelly & Walsh, 1921, at pp. 13–15. Also in *China Review* (Hong Kong), Vol. 8 (1879–1880), pp. 195–96. See also Valk, M. H. van der, *An Outline of Modern Chinese Family Law*, Peking, Henri Vetch, 1939, at pp. 133–38.

[3] See Kuo, Wei (ed.), *Ta-li-yuan Pan-chüch Ch'uan-shu* (Collection of Decisions of the Supreme Court), from the 1st to the 16th Year of the Republic of China, Shanghai, 1933, at p. 244. Judgment No. 1971, 4th Year of the Republic.

[4] See Valk, M. H. van der (transl.), *Interpretations of the Supreme Court at Peking, Years 1915 and 1916*, Sinological Institute, Faculty of Arts, University of Indonesia, Batavia, 1949, at p. 289. Judgment No. *Tung* 485.

adoption would also be valid even though it were intended for instituting Chin Hing Shang as an heir of Yu Shee Chin and Chin Jan.

Assuming that Chin Hing Shang was "abandoned" by his natural parents shortly after his birth and was adopted by the adopting parents, the adoption would be completely valid under the Chinese law described above. On the other hand, assuming that Chin Hing Shang was not "abandoned" and, therefore, the consent of the natural parents was required, the adoption would still be valid because no written document or any other formality was required by the law.

Nor was it required by the law that the adopting mother must be the principal or the sole wife of the adopting father for the adoption to be valid between her and the adopted child.

The answer to the above question is, therefore, that the adoption was valid between Chin Hing Shang (Henry S. Chin) and his adopted mother Chin Jan in 1927.

(2) Was there a valid adoption of Chin Hing Shang by Yu Shee Chin in 1927?

·The present adoption was valid between Chin Hing Shang and his adopted father Yu Shee Chin in 1927 for the same reasons stated above.

(3) ·Was there a valid·adoption of·Chin Hing Shang by Yu Shee Chin and Chin Jan under the Chinese law upon and after the arrival of Yu Shee Chin and Chin Jan and the children in Hong Kong and Canton in 1933, in view of the continued custodial relationship?

Inasmuch as the present adoption was valid under the applicable law of the time of adoption (*i.e.*, 1927), it remained valid after the coming into force of the Family Relations Law of the Civil Code of the Republic of China on May 5, 1931.

This is especially ·so as in Art. 11 of the Enforcement Law of the Family Relations Law of the Civil Code it was specifically provided that "Adoption relationship [including the simple adoption and the institution of an heir], even having taken place prior to the coming into· force of the Family Relations Law of the Civil Code, shall have the effects provided for by the Family Relations Law of the Civil Code after the coming into force of the said Law."

The provisions of the Family Relations Law of the Civil Code relating to adoption are Arts. 1072–1083. The prohibition of adopting a child of different surname to become an heir of the adopting parents was abolished, and one may adopt any person, whether of the same kindred or not, as his adopted child, as far as he has complied with the requirements set forth in the above provisions (Arts. 1074–1076). Among others, the law provides that an adopted child should take the surname of the adopting parents, and that except for otherwise pro-

245

vided by the law, the relations between the adopted child and the adopting parents are the same as those which exist between the parents and their natural-born children (Arts. 1077 and 1078). While in principle an adoption must be effected in writing, this does not apply to a case where the adopted child has been brought up as a child of the adopting parents since infancy (Art. 1079).[5]

(4) Did the Treaty of Peace, Friendship, and Commerce between China and the United States, signed at Tientsin on June 18, 1858 prevent a valid adoption of Chin Hing Shang by Yu Shee Chin and Chin Jan under Chinese law?

An examination of the above treaty shows that the treaty does not contain any provision which may be considered as having prohibited or in any way restricted an adoption of a child of U.S. citizenship by Chinese adopting parents in the United States, the validity of which is otherwise recognized by the laws of the United States and China respectively.

### III. Conclusion

From the above observations and for the reasons mentioned above, I, as an expert on Chinese law, am of the opinion that the adoption of Chin Hing Shang (Henry S. Chin) by Yu Shee Chin and Chin Jan in 1927 was valid under the Chinese law applicable in that year in Kwangtung, China—the adopting father's domicile at the time of the adoption in question. It has been valid since then and has remained so after the coming into force of the current Family Relations Law of the Civil Code of the Republic of China.

*July 8, 1966*
*New York, N.Y.*

Fu-shun Lin,
*Assistant Professor of*
*Chinese Law,*
*Columbia University.*

---

[5] For an English translation of the Civil Code of the Republic of China, see Law Revision Planning Group (transl.), *Laws of the Republic of China*, 1st ser., Taipei, China Printing Co., 1961. The section relating to "Relations between parents and children" in pp. 319–24, and the Enforcement Law in pp. 334–37.