## MATTER OF KWOK

### In Visa Petition Proceedings

### A-19406572

*Decided by Board April 25, 1972*

(1) The validity of the infancy adoption of beneficiary in mainland China in 1936 is not vitiated by the fact beneficiary is a female, since Article 1072 of the Civil Code of the Republic of China specifically provided for the adoption of either males or females. [*Matter of Yiu*, 13 I. & N. Dec. 624, distinguished.]

(2) The contention that an adoption must be accomplished by a juridical act before it can be recognized as valid for immigration purposes, is rejected. *Matter of Fong*, 10 I. & N. Dec. 497; *Matter of Chin*, 12 I. & N. Dec. 240; *Matter of Jue*, 12 I. & N. Dec. 296; *Matter of Chan*, 12 I. & N. Dec. 513; among other prior precedent decisions which recognized Chinese adoptions, even though created without benefit of a juridical act, are reaffirmed.

(3) The long-standing rule that the validity of an adoption for immigration purposes is governed by the law of the place where the adoption occurred (*Matter of R—*, 5 I. & N. Dec. 438, 6 I. & N. Dec. 760), is reaffirmed.

ON BEHALF OF PETITIONER:
Benjamin Gim, Esquire
217 Park Row
New York, New York 10038

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

The United States citizen petitioner applied for preference status for the beneficiary as his adopted daughter under section 203(a)(1) of the Immigration and Nationality Act. The facts are not in dispute. The District Director, on January 14, 1971 found that an adoption had occurred under the laws of China and approved the petition. However, his initial approval was revoked on July 22, 1971 on the basis of this Board's decision in *Matter of Yiu*, 13 I. & N. Dec. 624 (BIA, 1970). The District Director construed *Matter of Yiu* to rule out a valid adoption in the present case because the beneficiary is a female. The petitioner appeals from the revocation. His appeal will be sustained.

The record indicates that the beneficiary was adopted in China in May of 1936. The beneficiary was ten months old at the time of adoption. The petitioner's husband, who is now deceased, evidently gave his consent to the adoption. The beneficiary resided with the petitioner from 1936 until 1955. Although no written adoption

agreement was presented, the District Director was correct in his initial determination that an "infancy" adoption was proved in this case. See *Matter of Jue*, 12 I. & N. Dec. 296 (BIA, 1967).

Petitioner's counsel protested the proposed revocation on the ground that it was incorrect to apply *Matter of Yiu, supra,* to the present case. Counsel's contention was entirely correct. As he pointed out, the *Yiu* decision was concerned with a 1949 Hong Kong adoption and was decided on the basis of Chinese customary law as it was applied in Hong Kong. Our opinion in *Matter of Yiu, supra,* expressly held that the provisions of the Civil Code of the Republic of China did not apply. The present case, on the other hand, involves a Chinese adoption that took place on the mainland of China in 1936. Consequently, the Civil Code of the Nationalist Republic will be controlling. We note that the portion of the Civil Code dealing with adoption, Book IV (Family), was promulgated on December 26, 1930 and came into force on May 5, 1931.

As counsel indicated, the Civil Code of the Republic of China did not prohibit the adoption of females. Article 1072 specifically provided for the adoption of either males or females. See *Matter of Chan*, 11 I. & N, Dec. 219 (BIA, 1965).

Ordinarily we would simply sustain the appeal and reinstate the approval of petitioner's petition. However, the Service has raised an additional issue which must be disposed of before the present appeal may be resolved.

The issue is a crucial one with potential impact, not only upon all Chinese adoptions, but also upon adoption cases from many other countries. The Service would have us recede from a long line of decisions in which we recognized adoptions in China as valid for purposes of section 101(b)(1)(E) of the Immigration and Nationality Act. The contention is that Chinese adoptions, even though valid under the laws of China, nevertheless do not constitute "adoptions" for immigration purposes because, it is argued, an acceptable adoption may be created only as a result of a "juridical act." In essence, the Service would have us recede from the long-standing rule that the validity of an adoption upon which an immigration status is grounded is governed by the law of the place where the adoption status was created, *Matter of R—*, 6 I. & N. Dec. 760 (BIA, 1955).

Historically, the courts have recognized Chinese adoptions as valid for purposes of the immigration laws. One court, in *Ex Parte Fong Yim et al.*, 134 Fed. 938 (S.D.N.Y., 1905), held as follows:

> The evidence shows that the practice of adopting children in China is very common, that it takes place substantially without legal formalities, but that the rights and obligations of children adopted and recognized as such are similar to those of natural children. Under these circumstances I can see no

difference between the legal status of adopted children and of natural children.

This holding was specifically endorsed in *Johnson v. Shue Hong*, 300 Fed. 89 (1 Cir., 1924).

The general rule in favor of recognizing adopted children as children was changed by the Immigration Act of 1924. That statute ordered that adoptions occurring after January 1, 1924 would no longer be recognized for immigration purposes. In *Tillinghast* v. *Chin Mon*, 25 F.2d 262 (C.A. 1, 1928), cert. dismissed 278 U.S. 666 (1929), the court stated that the 1924 Act took into account the construction of the prior act found in *Johnson v. Shue Hong, supra.* Thus, from 1924 onward, adoptions were given no recognition for immigration purposes until the 1957 amendment to the Act of 1952 which created section 101(b)(1)(E). The rule set forth in *Ex Parte Fong Yim et al., supra,* and endorsed in *Johnson* v. *Shue Hong, supra,* then, is back in operation by virtue of the 1957 amendment to the 1952 Act.

The Service's position ignores many judicial and administrative precedents recognizing Chinese adoptions as valid for immigration purposes. The Service bases its argument almost entirely on a definition of the word "adoption" appearing in *Matter of Chan, supra,* which equates adoption with a "juridical act." In that case two definitions of adoption were set forth. The first, taken from *Bouvier's Law Dictionary* (3d revision), is as follows: "Adoption is a juridical act creating between two persons certain relations, purely civil, of paternity and filiation." The second, taken from 2 *Corpus Juris Secundum*, 367, reads as follows: "Adoption, in legal contemplation, is the act by which parties thereto establish the relationship of parent and child between persons [not] so related...."

It is well-settled that under the Chinese Civil Code an adoption did not require the permission or approval of a court or other governmental agency. The same was true of adoptions under the Ching Code. Hence, no "juridical act" was required under Chinese law. As regards the present case, Article 1079 of the Civil Code merely required that "Adoption must be effected in writing, unless the person to be adopted has been brought up as a child of the adopter since infancy." The word "infancy," as used in this connection, has been defined by the Supreme Court of China to relate to a child who is under the age of seven years.

This Board has published a number of precedent decisions concerning adoptions which took place under the Civil Code of the Republic of China. In no case was it found that a Chinese adoption was invalid because there was no juridical act of adoption. In the following cases we recognized the Chinese adoptions as valid for

purposes of section 101(b)(1)(E), despite the absence of any juridical act: *Matter of Fong,* 10 I. & N. Dec. 497 (BIA, 1964); *Matter of Chin,* 12 I. & N. Dec. 240 (BIA, 1967); *Matter of Jue, supra,* and *Matter of Chan,* 12 I. & N. Dec. 513 (BIA, 1967). A child adopted according to the Civil Code was found to qualify as a "child" for purposes of the Act of December 28, 1945, in the following reported cases: In the *Matter of W—M—S—and W—O—W—,* 3 I. & N. Dec. 131 (BIA, 1948 and A.G., 1948) and In the *Matter of W—M—G—,* 3 I. & N. Dec. 608 (BIA, 1949). See also *Matter of Yue,* 12 I. & N. Dec. 747 (BIA, 1968) for a case arising under the Ching Code.

Inasmuch as the Service's objection rests upon the technical ground that one of the definitions of "adoption" contained in *Matter of Chan, supra,* seemingly requires a juridical act, we should examine that definition to ascertain its derivation and proper legal effect. We note that *Bouvier's Law Dictionary* (3d revision) may hardly be classed as a contemporary source of law, being first written in 1838 and last revised in 1914. The definition of adoption equating adoption to a juridical act is not the primary definition of adoption set forth in *Bouvier's Law Dictionary.* The first definition listed is the following: "The act by which a person takes the child of another into his family and treats him as his own." The definition found in that work that equates adoption to a juridical act is credited to "6 Demolombe, § 1," a reference to a commentary on the Code Napoleon. Hence, the definition of adoption upon which the Service relies has no validity in connection with non-civil law countries such as China.

In addition, *Matter of Chan,* 11 I. & N. Dec. 219 (BIA, 1965), in which the restrictive definition appears, was decided on other grounds. In *Chan* we held that no adoption had been established because the facts merely disclosed a *loco parentis* relationship, with no adoption intended. The statement that an adoption contemplated a juridical act was pure dictum not essential to the resolution of the case.

Since Congress did not provide us with a definition of "adoption," we should apply the term in its plain and ordinary meaning. *Webster's New International Dictionary,* 2d edition, defines adoption as "Voluntary acceptance of a child of other parents to be the same as one's own child." Absent a more particular formulation from Congress, we shall employ this definition. We note that it is in general accord with (1) the definition of adoption found in *Corpus Juris Secundum, supra,* and (2) the first definition of adoption found in *Bouvier's Law Dictionary.*

We reject the argument that an adoption must be accomplished by a juridical act before it can be recognized as valid under section 101(b)(1)(E) of the Act. We reaffirm our prior precedent decisions

130

which recognized Chinese adoptions, even though created without benefit of a juridical act. We also reaffirm our long-standing rule that the validity of an adoption for immigration purposes is governed by the law of the place where the adoption occurred.

In the present case a valid infancy adoption under Article 1079 of the Civil Code was intitially established to the satisfaction of the District Director. The approval of the petition was subsequently revoked, but, as we have seen, for improper reasons. The beneficiary, then, qualifies as a "child" for purposes of section 101(b)(1)(E). The approval of preference status should be reinstated. The appeal will be sustained and the following order will be entered.

**ORDER:** It is hereby ordered that the District Director's revocation of the approval of the petition granting preference classification to the beneficiary be and the same is hereby set aside, and the approval of the beneficiary's preference classification be and the same is hereby reinstated as of the date of original approval.