MATTER OF PALELEI

In Visa Petition Proceedings

A-21328815

*Decided by Board April 10, 1979*

(1) In order to qualify as a "daughter" for preference purposes, a beneficiary must once have qualified as a "child" of the petitioner under section 101(b)(1) of the Act.

(2) To be valid for immigration purposes, an adoption must create a legal status or relationship.

(3) To determine whether an adoption is valid, we look to the law of the place where the adoption took place.

(4) To prove a customary adoption, the petitioner must establish that a custom existed which was officially recognized as resulting in a legal adoption, legally binding on the parties, and that the adoption under consideration conformed with the custom, and resulted in a legal adoption in the place where the adoption occurred.

(5) In the absence of evidence that customary adoptions in Tonga are officially recognized as legal adoptions, and where the Crown Solicitor of Tonga is of the opinion that customary adoptions are not so recognized, such adoptions will not be recognized as valid under United States immigration laws.

ON BEHALF OF PETITIONER:  
Michael D. Finnegan, Esquire  
Simmons & Ungar  
517 Washington Street  
San Francisco, California 94111

ON BEHALF OF SERVICE:  
George Indelicato  
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The case comes forward on appeal from the decision of the District Director revoking approval of the visa petition filed on behalf of the beneficiary.

On June 16, 1976, the lawful permanent resident petitioner applied for second-preference benefits for the beneficiary as her adopted daughter under section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(2). The petition was initially approved on June 18, 1976, but on August 30, 1976, the District Director advised the petitioner of his intent to revoke the petition on the ground that the adoption was not recognized under Tongan Civil Law and because the petitioner had failed to establish that the beneficiary was under 14 years of age at the

time of the adoption. The District Director revoked approval of the petition on September 30, 1976. On appeal, the petitioner submitted additional evidence suggesting that her adoption of the beneficiary was in accordance with the customs of Tonga and was recognized under the law of Tonga. We remanded the record to the District Director for consideration of the additional evidence and entry of a new decision. On March 8, 1978, the District Director reaffirmed his revocation of approval of the petition on the basis that an adoption under Tongan law had not been established. The petitioner has appealed from that decision. The appeal will be dismissed.

The beneficiary, a native and citizen of Tonga, was born legitimate on January 18, 1951. Shortly after her birth she was given over into the care of her uncle. In 1956 the beneficiary was taken into the home of the uncle's natural daughter, the petitioner in this case, and her husband. The beneficiary resided with this couple until their departure for the United States in 1975. The petitioner argues that we should find a valid adoption pursuant to the customary and tribal law of Tonga.

In her brief the petitioner explains that Tongans frequently give children to close relatives for the purpose of rearing them. Her contention is supported by an opinion of Mr. William Clive Edwards, who states that he is a licensed lawyer of the Supreme Court of Tonga; C. Urbanowicz, "Tongan Adoption Before the Constitution of 1875," from *Ethnohistory 20/2* at 109–123 (1973); K. Morton, "Tongan Adoption," which appears as chapter 4 of I. Brady, *Transactions in Kinship-Adoption and Fosterage in Oceania* (1976).

In order to qualify as a "daughter" for preference purposes, a beneficiary must once have qualified as a "child" of the petitioner under section 101(b)(1) of the Act. *Nazareno v. Attorney General,* 512 F.2d 936 (D.C. Cir. 1975), cert. denied, 423 U.S. 832 (1975); *Matter of Bullen,* Interim Decision 2621 (BIA 1977); *Matter of Coker,* 14 I. & N. Dec. 521 (BIA 1974). The relevant provision in this case is section 101(b)(1)(E), which includes in the definition of child:

[A] child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years. . . .

We have held that an adoption, to be valid for immigration purposes, must create a legal status or relationship. *Matter of Benjamin,* Interim Decision 2505 (BIA 1976). A relationship in the nature of charitable help to a needy child is not an adoption under our immigration laws. *Matter of Yee,* 13 I. & N. Dec. 620 (BIA 1970), overruled on other grounds in *Matter of Yee,* 14 I. & N. Dec. 132 (BIA 1972). To determine whether the requisite relationship exists, we look to the law of the country in which the adoption took place. *Matter of Garcia-Rodriguez,* Interim Decision 2630 (BIA 1978); *Matter of Dhillon,* Interim Decision 2620

(BIA 1977); *Matter of Benjamin, supra; Matter of Park*, Interim Decision 2437 (BIA 1975); *Matter of Kwok*, 14 I. & N. Dec. 127 (BIA 1972); *Matter of Lau*, 10 I. & N. Dec. 597 (BIA 1964); and *Matter of R—*, 6 I. & N. Dec. 760 (BIA 1955). If the civil law of a country does not recognize adoptions, no benefits accrue under the United States immigration laws based on adoptions allegedly occurring in that country. *Matter of Benjamin, supra; Matter of Ashree, Ahmed and Ahmed*, 14 I. & N. Dec. 305 (BIA 1973); *Matter of Boghdadi*, 12 I. & N. Dec. 666 (BIA 1968); *Matter of B—*, 9 I. & N. Dec. 521 (1961).

In *Matter of B—, supra*, we discussed customary adoptions:

> [I]n the absence of a statutory procedure of adoption, the petitioner must establish that a custom existed . . . which was recognized officially as resulting in a legal adoption, legally binding upon the parties concerned, and that it was necessary to establish that the adoption of the beneficiary by the petitioner conformed with these customs and resulted in a legal adoption.

This Board has accepted as valid customary adoptions which are recognized as legally valid by the country in which the adoption occurred. *Matter of Yue*, 12 I. & N. Dec. 747 (BIA 1968); *Matter of Ng*, 14 I. & N. Dec. 135 (BIA 1972).

The critical issue in this case is whether the beneficiary's adoption is legally valid under Tongan law.

Before making his decision in this case, the District Director requested assistance from the Library of Congress. The Library of Congress consulted the Crown Solicitor of Tonga who advised that the law of Tonga provides for the adoption of illegitimate children under certain circumstances, but that:

> There is no provision in our law for the adoption of children born legitimately. Nevertheless it has been a common practice in Tonga for relatives to raise and maintain children, including legitimate children as part of the family and to treat them in all respects as if they were legally adopted. Such "adoption" does not give the child any legal right in the estate of the foster parent and is not recognized as legally valid under Tongan law.

The petitioner argues that inasmuch as the Crown Solicitor acknowledges the existence of customary adoptions, his opinion is deficient because it appears to conclude that such customary adoptions are not legally recognized because the adopted child has no right in the estate of the adoptive parent. We disagree. In our view, the Crown Solicitor merely acknowledges the fact that there are customary adoptions in his country, but in his opinion, such adoptions are not recognized as legally valid under Tongan law. His statement that the adoption does not give the child any right in the estate of the foster parent is merely a prelude to his conclusion; it points to one of the attributes of a natural parent-child relationship which does not accrue to a child adopted pursuant to Tongan custom.

Further, the Crown Solicitor's conclusion is supported by one of the sources relied upon by the petitioner. In chapter 4 of I. Brady, *Transactions in Kinship-Adoption and Fosterage in Oceania* (1976), Mr. Morton (author of chapter 4) relates that an exchange of children which he calls adoption is a frequent occurrence in Tonga. He explores the circumstances of these exchanges and their social acceptance. On page 65 he notes:

> Few applications for legal adoptions are made to the courts because the circumstances of Tongan Adoptions are frequently incongruent with the European model of adoption *applied in the courts*. (Emphasis supplied.)

Irrespective of the basis for the Crown Solicitor's conclusion, the fact remains that the petitioner has shown no legal purpose for which customary adoptions are officially recognized in Tonga. We will not recede from the interpretation of section 101(b)(1)(E) which we have held consistently, since its enactment in 1957, that for an adoption to be recognized under the Act, it must be considered a lawful adoption in the jurisdiction where it occurred.

The petitioner's explanation for the lack of evidence of official recognition of customary adoptions is that the people of Tonga do not generally resolve their familial disputes in court and inasmuch as Tongan customary adoption is a consensual transaction, there would be few custody and parental rights disputes to be litigated.

The burden of proof in visa petition proceedings is upon the petitioner. *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966). A petitioner who relies on foreign law to establish eligibility for an immigration benefit must prove that law as if it were a question of fact. *Matter of Annang*, 14 I. & N. Dec. 502 (BIA 1973). Notwithstanding a plausible explanation for her failure, the petitioner has still failed to meet her burden in this case. Therefore, despite the equities present, we must dismiss the appeal.

ORDER: The appeal is dismissed.