678 F.2d 123
 Finau F. MILA and Anau S. Fainga, Plaintiffs-Appellees,
v.
DISTRICT DIRECTOR OF the DENVER, COLORADO DISTRICT OF the
IMMIGRATION AND NATURALIZATION SERVICE, UNITED
STATES DEPARTMENT OF JUSTICE, Defendant-Appellant.
 No. 80-2072.
 United States Court of Appeals,
Tenth Circuit.
 April 19, 1982.
Rehearing Denied June 2, 1982.
 
 Jimmy Gurule, Washington, D. C. (James P. Morris, Crim. Div., Dept. of Justice, Washington, D. C., with him on the briefs), Attys., for defendant-appellant.
 Charles B. Casper of Fabian & Clendenin, Salt Lake City, Utah, for plaintiffs-appellees.
 Terry J. Helbush, San Francisco, Cal., filed an amicus curiae brief for the Immigration and Nationality Lawyers Association.
 Before SETH, Chief Judge, and McKAY and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 The government appeals from the district court's judgment that the Immigration and Naturalization Service (INS) incorrectly denied Anau S. Fainga preferential status as the sister of Finau F. Mila, a naturalized United States citizen, in qualifying for a permanent visa. See 8 U.S.C. § 1153(a)(5). Fainga, a native of the Kingdom of Tonga, was adopted by her mother's sister (Mila's mother) shortly after birth. Because Tongan law provides only for legal adoptions of children born illegitimately and Fainga was born legitimately, the adoption was according to Tongan custom. The INS interpreted the statute that defines "adopted children" as excluding Tongan children adopted by custom. The district court disagreed with the INS interpretation. The controlling issue on appeal is whether the district court gave too little deference to the INS interpretation.
 
 
 2
 To guide the INS in determining the order in which aliens subject to numerical quotas may become lawful permanent residents of the United States, Congress has set forth a system of priorities under which brothers and sisters of United States citizens are entitled to preferential treatment. See 8 U.S.C. § 1153(a) (5). To establish a brother-sister relationship, petitioner and the beneficiary of the preference must show they are "children" of a common parent as defined at 8 U.S.C. § 1101(b)(1). Matter of Clahar, 16 I & N Dec. 484, 485 (BIA 1978). Adopted children must meet the requirements of 8 U.S.C. § 1101(b)(1) (E):
 
 
 3
 "(E) a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years ...."
 
 
 4
 Petitioner has the burden of establishing that the purported adoption accords with the law of the country where it took place. Matter of Garcia-Rodriguez, 16 I & N Dec. 438, 439 (BIA 1978).
 
 
 5
 The INS district director does not dispute that Fainga was adopted by custom, but denied Mila's petition because Fainga's adoption was not a legal one. The Board of Immigration Appeals affirmed the district director's decision and dismissed Mila's appeal. On review the district court reversed and remanded, directing that Fainga be given preferential status because Tongan custom recognizes Fainga as the bona fide adopted daughter of Mila's mother. The district court held the INS requirement of legal adoption was unduly restrictive and misinterpreted congressional intent, declaring that so long as a bona fide parent-child relationship exists, the INS has no reason to distinguish between a country that provides for adoption by law and one that provides for adoption by custom.
 
 
 6
 A federal court may reverse an INS denial of a preferential visa petition only if the INS abused its discretion. The INS abuses its discretion if it bases its decision upon an improper understanding of the law. Kaliski v. District Director of Immigration and Naturalization Service, 620 F.2d 214, 216 n.1 (9th Cir. 1980). The Supreme Court has recognized that the construction of a statute by those charged with its administration is entitled to substantial deference. See, e.g., United States v. Rutherford, 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979). If reasonable and not contrary to the discernible intent of Congress, the agency's interpretation should be approved even though it is not the only reasonable interpretation or the one the reviewing court would make if deciding the issue in the first instance. See Unemployment Compensation Comm'n v. Aragon, 329 U.S. 143, 153-54, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946); Nazareno v. Attorney General, 512 F.2d 936, 939-40 (D.C.Cir.1975).
 
 
 7
 The INS interprets 8 U.S.C. § 1101(b)(1)(E) as requiring an adoption to accord with the laws of the country where it allegedly occurred. Matter of Garcia-Rodriguez, 16 I & N Dec. 438, 439 (BIA 1978). If that country has a legal procedure for adoption, the INS insists that the petitioner prove the adoption met those requirements. See Matter of Kong, 15 I & N Dec. 224 (BIA 1975); Matter of Kwik, 13 I & N Dec. 89 (BIA 1968). If the country has no formal adoption system, the INS recognizes customary adoption, but only if that country's courts accept customary adoption as legally valid. The INS has recognized China's customary adoptions because China's legal system treats customarily adopted children as having rights equal in all respects to natural children. See Matter of Kwok, 14 I & N Dec. 127, 128-29 (BIA 1972). But if the country does not legally acknowledge customary adoption, the INS, at least since 1961, has refused to find an adoption valid for immigration purposes. Matter of B, 9 I & N Dec. 521 (BIA 1961); accord, Matter of Palelei, 16 I & N Dec. 716 (BIA 1979); Matter of Benjamin, 15 I & N Dec. 709 (BIA 1976); Matter of Ashree, Ahmed and Ahmed, 14 I & N Dec. 305 (BIA 1973).
 
 
 8
 The INS concluded that Tongan law does not recognize Tongan customary adoptions as legally valid and therefore denied Mila's petition, relying upon Matter of Palelei, 16 I & N Dec. 716 (BIA 1979), also involving a Tongan customary adoption. That decision relied on a letter of the Tongan Crown Solicitor stating:
 
 
 9
 "There is no provision in our law for the adoption of children born legitimately. Nevertheless it has been a common practice in Tonga for relatives to raise and maintain children, including legitimate children as part of the family and to treat them in all respects as if they were legally adopted. Such 'adoption' does not give the child any legal right in the estate of the foster parent and is not recognized as legally valid under Tongan law."
 
 
 10
 Letter from Crown Solicitor of Tonga to American-British Law Division, Library of Congress (Jan. 16, 1978) (quoted in Matter of Palelei, 16 I & N Dec. at 718). The INS emphasis has continued to be upon proof of the relationship, stressing need for a court decree or "legal recognition" of the adoption.
 
 
 11
 Appellees contend that the INS overemphasizes inheritance rights, which is particularly inappropriate in the instant case since no adopted child, whether legally or customarily adopted, may inherit under Tongan law. See Tonga Const. § 111; Law of Tonga c. 63, § 76(ii) (1967). Except for references by the dissent in Matter of Kong, 15 I & N Dec. 224, 226 (BIA 1975), we see in INS decisions no special emphasis upon inheritance rights of adopted children. See Matter of Ng, 14 I & N Dec. 135, 139 (BIA 1972) (customarily adopted daughter entitled to preferential status though Chinese law restricted inheritance to sons).
 
 
 12
 Although appellees can cite no authority holding Tongan customary adoptions legally valid, they maintain that Tongan customs are generally recognized in Tongan law. In support, they submit that in legal proceedings testimony of Tongan customs is admissible into evidence, Law of Tonga c. 13, §§ 5, 27 (1967), and that "assessors" sit with Tongan land courts to advise on customs relevant to disputes over land, Law of Tonga pt. IX, § 123. The amicus brief adds that in 1911, in the only reported Tongan case involving custody of a customarily adopted child, the adopting parents prevailed over a natural grandfather. Amicus Br. p. 18. But the single instance of a Tongan court awarding legal custody of a child to his customary adoptive parents rather than his natural grandfather does not negate the general rule stated by the Tongan Crown Solicitor. In spite of the general Tongan treatment of customs, Mila and Fainga do not claim that Tongan customary adoptions have the legal status under Tongan law required by the INS.
 
 
 13
 Furthermore, Mila and Fainga contend the INS interpretation of 8 U.S.C. § 1101(b)(1)(E) is unduly restrictive and thwarts the congressional intent of preserving the family unit by ignoring the genuineness of a family relationship. We agree that a broader interpretation would recognize and help to preserve some families that suffer under the INS interpretation. We think the instant case is a close one on the law. Since more people seek to immigrate into the United States than are permitted by congressionally established quotas, the INS interpretation benefits families with legally adopted children. It has the practical advantages of decreasing the likelihood of fraud, serving as a relatively bright line to determine which adoptions will be recognized for immigration purposes, and insuring that persons who bring adopted children into this country are legally responsible for their care. The legislative history is not so clear that we can say the INS interpretation is wrong. The INS has expressed its view in opinions issued at least since 1961, see Matter of B, 9 I & N Dec. 521 (BIA 1961), and since that date Congress has amended 8 U.S.C. § 1101 many times without changing the definition of adopted children. Thus, we hold that while the INS interpretation is not the only reasonable one, it is a reasonable construction and the district court erred in failing to defer to it.
 
 
 14
 Because we have found reasonable the INS interpretation of 8 U.S.C. § 1101(b) (1)(E), and Mila and Fainga do not contend that Tongan customary adoptions meet the standard set by that interpretation, the INS did not abuse its discretion in denying the petition.
 
 
 15
 494 F.Supp. 998. REVERSED.
 
 McKAY, Circuit Judge, dissenting:
 
 16
 When Congress adopted 8 U.S.C. § 1101(b)(1)(E), I am satisfied that it mandated that the Immigration and Naturalization Service review foreign adoptions with an eye to preserving genuine family relationships. The Service itself recognizes that at least in some instances common law (customary) adoptions will satisfy the statute even though such adoptions exist outside an established formal adoption scheme. Matter of Ng, 14 I & N Dec. 135 (BIA 1972); Matter of Yue, 12 I & N Dec. 747 (BIA 1968). In this case the trial court correctly held that the Service ignored the statutory mandate in an attempt to establish something approximating a bright line test that places too much reliance on some formal juridical anglo-American notions of adoption and too little emphasis on whether the country recognizes these relationships as genuine family units.
 
 
 17
 The Service relies heavily on a letter of the Tongan Crown Solicitor for its proposition that Tongan law does not recognize customary adoptions as legally valid. This letter supports a more compelling proposition: that children customarily adopted in Tonga are treated exactly like natural children except with regard to inheritance rights. As the majority seems to recognize, preference status cannot and does not turn on inheritance rights because neither statutorily- nor customarily-adopted children in Tonga can inherit. The majority never says exactly what element or elements make for a "legally valid" adoption, but it seems to require some juridical act. The Service itself has rejected the notion that a juridical act is required for a legally valid adoption. Matter of Kwok, 14 I & N Dec. 127 (BIA 1972). Even if the test is judicial acknowledgement, that test was met here since the only Tongan court ever to deal with the issue upheld the customarily-adopting parents' claim of custody over that of the natural grandfather. In Re Lolesio, 1 Tongan Law Report 14 (1911). In that case the Supreme Court of Tonga recognized that customary adoption gives the adoptive parents full legal custody and control over the child's upbringing to the same extent as any formal adoption. That opinion reads in its entirety as follows:
 
 
 18
 An application for the custody of an illegitimate child (boy) aged 131/2 years. When the child was 3 or 4 years old his mother gave him into the care of the applicant who thereafter cared for and looked after him, until he was taken away by one Kama the boy's grandfather, his father's father, shortly before the hearing. The boy's mother died when the boy was about 6 years old.
 
 
 19
 HELD. The grandfather had no right to the custody and that the boy should be returned to the applicant.
 
 
 20
 SKEEN, C. J. The boy is illegitimate and the mother has "pule." The father has no power, and therefore the grandfather has none. He has no succession rights under his father. The law does not recognise the father. The mother gave the boy to Soakimi (the applicant); he is the man who has control of the boy. The father has not given one penny, till the boy commences to get big he takes no notice of him. He is in the wrong. Order of the Court: Lolesio will return to Soakimi and will obey him in all things; if not Soakimi can punish him and Lolesio can complain to the Court if he is ill treated. Kama (grandfather) Paini and Mailau are warned to leave the boy alone. No fee charged.
 
 
 21
 Id.
 
 
 22
 The majority distinguishes Chinese customary adoptions, which are recognized by the Service, on the basis that Chinese law treats customarily-adopted children equally in all respects to natural children. In Tonga, it is true that customarily-adopted children are not treated exactly equally to natural children by reason of their lesser inheritance rights. The majority neglects the fact, however, that Tongan law does not even treat statutorily-adopted children equally to natural children because no adopted children in Tonga have inheritance rights (just as females, whether natural-born or adopted, have no inheritance rights under Chinese law). I can see no reason to discriminate between customarily-adopted children and statutorily-adopted children with regard to immigration status on this unprincipled basis. Accordingly, I would affirm the trial court's decision.