MATTER OF BOGHDADI

In Visa Petition Proceedings

A-13191300

*Decided by Board March 27, 1968*

Visa petition to accord beneficiary preference classification under section 203(a)(5) of the Immigration and Nationality Act, as amended, as the brother of the U.S. citizen petitioner, on the basis of his alleged adoption by petitioner's father at the time of the latter's marriage to beneficiary's mother in Egypt in 1942, is denied for lack of a valid adoption since religious law applied to personal status matters in Egypt and adoption was recognized neither under Egyptian (Islamic) law nor under Rabbinical (Judaic) law.

ON BEHALF OF PETITIONER:
Laurence H. Pearson, Esquire
1501 Broadway, Suite 1904
New York, New York  10036
(Brief filed)

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

The case comes forward on appeal from the order of the District Director, New York District, dated October 3, 1967 denying the visa petition for the reason that the petitioner is not related by blood to the beneficiary, each having been born of different parents; and that the petitioner has failed to submit any documentary evidence to substantiate the claim that the beneficiary was legally adopted under the laws of his place of birth and/or his alleged stepfather's domicile; the beneficiary does not meet the definition of a "child," as set forth in section 101(b)(1)(D) (*sic*) of the Immigration and Nationality Act and therefore cannot qualify as a "brother" of the petitioner. The conclusion that the visa petition should be denied is correct, however, we do not necessarily adopt the basis set forth by the District Director for such denial.

The petitioner, David Gammal, was born in Alexandria, Egypt on March 15, 1923 to Maatouk Gammal and his wife, Semha. He became a naturalized citizen of the United States on January 22, 1952. The petitioner's mother, Semha, died on May 2, 1942 in Cairo, Egypt. The beneficiary, born June 10, 1936 in Alexandria, Egypt, is the legitimate child of Mayer and Esther Boghdadi. The beneficiary's parents were

divorced on December 5, 1939 and Maatouk Gammal, the petitioner's father, and Esther Boghdadi, the beneficiary's mother, were married in Cairo, Egypt on August 20, 1942. All the parties named herein are of the Jewish faith. Evidence of the marriage and divorce of Esther and the subsequent marriage of Maatouk and Esther on August 20, 1942 are supported by documents from the Grand Rabbinate of the Jewish community in Cairo and Alexandria, Egypt.

It is claimed that the beneficiary is the adopted brother of the petitioner by virtue of the fact that prior to the marriage of Maatouk and Esther a marriage *contract* was signed which provided for the adoption of the beneficiary, the bride's son by her first marriage, by Maatouk. No evidence is obtainable regarding such a marriage contract, nor is such an adoption mentioned in the marriage *certificate* of Maatouk and Esther. Affidavits have been submitted by sons and daughters of the first marriage of Maatouk attesting to the fact that their father married Esther, he also adopted the beneficiary, and that the beneficiary grew up with his family and was treated by Maatouk as a son equal to his natural children. The birth certificate of the beneficiary cannot be located.

Section 101(b)(1)(E) of the Immigration and Nationality Act, as amended, defines the term "child" to include a child adopted while under the age of 14 years. In *Matter of Fong*, 10 I. & N. Dec. 497, we held that an adopted brother was eligible for preference quota status if he qualified as an adopted child; that there was no distinction between an adopted child or adopted brother and sister and between a natural child or brother and sister provided that the child met the requirements of section 101(b)(1)(E) of the Immigration and Nationality Act and that there existed a law under which an adoptive status could be created.

The instant case was submitted to the Library of Congress for information whether under the circumstances outlined above, there occurred a legal adoption either under Egyptian law or under Rabbinical or Judaic law. The memorandum from the Library of Congress is attached and made a part hereof. Egypt, like most Middle Eastern countries, still follows the traditional system of applying religious law to personal status matters. Until January 1, 1956 Muslim, Christian, and Jewish communities in Egypt maintained their own religious courts. Law No. 462, which became effective on January 1, 1956, abolished the religious courts and transferred their jurisdiction to the secular courts. In a dispute between two members of a non-Muslim community which cannot be settled according to the principles of their religious law, the principles of Islamic law will be applied in rendering judgment.

A thorough search of the Rabbinical law concerning adoption reveals that no legal principles exist under Rabbinical law for the institution of adoption. The Jewish community in Egypt prior to Law No. 462 of January 1, 1956 would have had to refer all adoption matters to secular courts, which would apply the principles of Islamic law. However, in studying the principles of Islamic law, it is found that adoption also is not recognized by Islamic law and that no claim of adoption can establish rights or obligations.

Since the memorandum from the Library of Congress is to the effect that the concept of adoption was not recognized under Egyptian or Rabbinical law, the petitioner has not borne the burden of establishing preference quota status on behalf of the beneficiary as his adoptive brother. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

ADOPTION UNDER THE RELIGIOUS LAWS OF THE JEWISH COMMUNITY
IN EGYPT

Egypt, like most Middle Eastern countries, still follows the traditional system of applying religious law to personal status matters. Until January 1, 1956, Muslim, Christian, and Jewish communities in Egypt maintained their own religious courts. Law No. 462, which became effective on January 1, 1956, abolished the religious courts and transferred their jurisdiction to the secular courts. As a result, application of Muslim, Christian, and Jewish religious laws is now entrusted to the civil courts. In a dispute between two members of a non-Muslim community which cannot be settled according to the principles of their religious law, the principles of Islamic law will be applied in rendering judgment.

A thorough search of the Rabbinical law concerning adoption reveals that no legal principles exist under Jewish law for such an institution. The Jewish community in Egypt prior to Law No. 462 of January 1, 1956 would have had to refer all adoption matters to secular courts, which would apply the principles of Islamic law. However, in studying the principles of Islamic law, we find that adoption also is not recognized by Islamic law and that no claim of adoption can establish rights or obligations.

Articles 911–918 of the Egyptian Civil and Commercial Procedure Law of 1949 as amended up to 1962 provide for the legalization of adoption without distinction between citizens and aliens.[1]

---

[1] *The Egyptian Compilation of Laws* (in Arabic, *Al-Mawsu'ah al-Misriyah Lil-Tashric wa al-Qada'*), Vol. 4, Alexandria, Egypt, 1962, p. 100, under Murafa'at.

*Article 911.*

If the national law of the person wishing the adoption and the national law of the person to be adopted permit adoption, the interested parties must come before the president of the Court of First Instance of the domicile of one of the parties to record their declarations, after establishing that the conditions and requirements demanded by their national laws have been complied with for the admissibility and validity of the adoption.

*Article 912.*

If the person wishing the adoption were the tutor, curator, or the legal administrator of the person to be adopted, no declarations shall be recorded until he resign his position and appoint another person to take over his duties. He must also submit an account of his administration of the minor's property, which has to be approved by the appropriate court.

*Article 913.*

At the request of the interested parties, a judgment for the certification of the documents containing the declarations of adoption is issued by the court.

*Article 914.*

The judgment for certification must contain the names and surnames of the parties concerned and the new name and surname of the person adopted.

*Article 915.*

Normally a judgment for certification of adoption can be appealed only; however, the Public Prosecutor may attack an appeal against a judgment for certification.

*Article 916.*

A summary of judgment for certification of adoption must be published three times during a period of ninety days in two daily newspapers designated by the court.

*Article 917.*

During the ninety-day period following pronouncement of judgment, upon the request of the interested parties, excerpts from the judgment shall be inscribed in the margin of the birth register of the adopted's birthplace and in the margin of his birth certificate. If the adopted were foreign born, the full text of the judgment must be registered in a register specially provided for this purpose at the office of the clerk of the Cairo tribunal.

*Article 918.*

The court which rendered the judgment for certification of adoption shall have the competence to try any action brought for nullification, certification, or revo-

Interim Decision #1846

cation of adoption. The court shall base its decision on the national laws of the two parties, following in its judgment the provisions of the preceding two articles.

Prepared by
Dr. Zuhair E. Jwaideh, Chief
Near Eastern and African Law Division
Law Library—Library of Congress
March, 1968