MATTER OF YEE

In Visa Petition Proceedings

A-19169736

*Decided by Board November 5, 1970*

Petitioner's alleged adoption of beneficiary in China in 1952 when latter was 4 years of age has not been established for immigration purposes since no adoption papers were presented nor adoption procedure or formalities followed, all previous Chinese laws and decrees regarding adoption were abolished when the Chinese Communist Government seized control in 1950, and further, Article 13 of the Communist Chinese Marriage Law pertaining to foster parents and foster children does not create a relationship equivalent to adoption.

ON BEHALF OF PETITIONER:  
Joseph P. Fallon, Esquire  
30 Hotaling Place  
San Francisco, California 94111

ON BEHALF OF SERVICE:  
Irving A. Appleman  
Appellate Trial Attorney

Petitioner, a native of China and a permanent resident of the United States, appeals the decision of the District Director denying this visa petition filed to accord the beneficiary classification as the unmarried adopted son of a permanent resident alien. The appeal will be dismissed.

In her visa petition, petitioner states that the beneficiary, also a native and citizen of China, who was born on December 20, 1948 in Kwangtung Province, China, was adopted by her in 1952 with the consent of her husband, who was then residing in the Philippines. The record reflects that when petitioner applied for an immigrant visa in 1967 she indicated on her visa application that she had a daughter and an adopted son, the beneficiary. Petitioner, in an interview, stated she adopted the beneficiary in China when he was four years of age; that the beneficiary's natural parents came from a neighboring village; that no adoption paper was executed and no milk money was paid.

The District Director noted, relying on an opinion from the Secretary for Home Affairs of the Colony of Hong Kong, that the Communist Chinese regime, in power at the time of the alleged

adoption, had not promulgated any statute or regulation prescribing the formalities for adoptions. He concluded that in the absence of a legal statutory pronouncement regarding adoption on the mainland of China since May 1, 1950, it was impossible to fulfill the requirements for adoption as set forth in *Matter of Fong*, 10 I. & N. Dec. 497 (1964).[1] Petitioner on appeal contends that, although no specific procedure exists under Communist law concerning adoptions, the institution of adoption has been preserved through Chinese customary law. We disagree. A memorandum from the Library of Congress, Far Eastern Law Division, of record, indicates that when the Chinese Communist Government seized the mainland of China in 1950, it decreed that:

All laws, decrees and judicial systems of Kuomintang reactionary government which oppress the people shall be abolished. Laws and decrees protecting the people shall be enacted and the people's judicial system shall be set up.[2]

The memorandum observes that after almost 19 years of existence, Communist China has failed to promulgate a civil code, criminal code, or code of civil procedure and as a result, no code of adoption, normally included within the civil code, has been enacted. There is no indication from the source material before us that Communist China, in suspending the Civil Code, intended to revert to Chinese custom and practice. In any event petitioner, in discharging the burden imposed upon her under the immigration law, would be required to establish that Chinese customary law prevailed on the Chinese mainland at the time of the alleged adoption. She has not met that burden.

Petitioner argues that, notwithstanding the suspension of the Chinese Civil Code, the institution of adoption has been preserved. She relies on Article 13 of the Communist Chinese Marriage Law which provides:

Parents have the duty to rear and to educate their children; the children

---

[1] In *Matter of Fong*, this Board observed:
By statute, in most jurisdictions, but not at common law, a person may adopt a child; and in such a case, unless there are statutory provisions to the contrary, the rights, duties and obligations arising from the artificial relationship will be substantially the same as those arising from the natural relation of parent and child. Where the artificial relation of parent and child is created by adoption under the statute, the relationship will by the express provisions of the statute, and even independently of such provisions, give rise to substantially the same rights, duties, and liabilities as arise out of the national relationship.

[2] *Chung yang jen min cheng fu fa ling hui pien, 1949–1950* [Collection of Laws and Decrees of the Central People's Government, 1949–1950], Peking, 1952, p. 19.

ve the duty to support and to assist their parents. Neither the parents r the children shall maltreat or desert one another.

The foregoing provision also applies to Foster-parents and Foster-chil- en. Infanticide by drowning and similar criminal acts are strictly prohib- d.

titioner urges us to accept the term "adoption" as within the eaning of "foster parents" and "foster children." Assuming ar- iendo that the provision quoted above recognizes that the insti- tion of adoption, standing alone, it does not serve to detail a ocedure regarding the manner in which adoptions may be ef- cted. The absence of any specific procedure bears upon the kind proof required under our immigration laws to establish a valid loption. Under 8 CFR 204.2(c) (7), to support a visa petition on half of an adopted child, a certified copy of the adoption decree ust accompany the petition. The only evidence before us bear- ig on adoption is petitioner's own word that the child was lopted by her. Whether this "adoption" was or is recognized by ie Chinese authorities on the mainland of China as creating ghts and obligations between petitioner and the beneficiary an- logous to those between a natural parent and its child has not een demonstrated.

Furthermore, while Article 13 of the Marriage Law refers to foster children," we are not persuaded that "adopted children" re included within that term. The term "foster" as it refers to arent-child relationship has been defined to mean affording, re- eiving or sharing nourishment or sustenance although not re- ited by blood or ties of nature or the like. *In re Norman's Es- ite*, 209 Minn. 19, 295 N.W. 63 (1940). The mere taking of a hild into a family and treating it as a natural offspring without omplying with formal procedures as prescribed by law is not an doption. *Succession of D'Asaro*, 167 So. 2d 391 (1964) ; *Stellmah . Henderdon Coop G.L.F. Service*, 47 N.J. 163, 219 A. 2d 616 1966).

In *Steelmah* v. *Henderdon Coop, supra,* the court discussed the neaning of adoption in a proceeding to obtain workman's com- ensation death benefits for a child who was allegedly adopted in Quebec, Canada. The court in interpreting the New Jersey Adop-

---

[3] Concerning adoptions effected under the Chinese Civil Code, this Board ias required, in accordance with Article 1079 of that Code, a writing as proof of adoption unless the person adopted has been brought up as a child of the adopter since infancy. The adoptive parents must have brought up :he child intending to adopt it. The mere fact of bringing up the child is not sufficient. *Matter of Chan*, 11 I. & N. Dec. 219 (BIA, 1965).

tion Act as it applied to workman's compensation cases observed at page 621:

Adoption was unknown to the common law although it was commonly practiced and regulated under the Civil Law of both ancient Greece and Rome. The first total regulation of the process was found in the Justinian Code from which our modern legislation derives its principles. Under this code, once the prescribed formalities were met, the adopted person was entitled to inherit from the adopted father both testate and intestate and there was created the relation of paternity and filiation not before legally recognized. . . . Our Adoption Act [N.J.S.A. 9:3–17] seeks to accomplish these same goals of succession, paternity and filiation by prescribing certain procedures to be met before the relationship of parent and child can be established.

\* \* \*

The full meaning of the concept is conveyed by the term "adopted" alone, for the mere taking of a child into a family and treating it as a natural offspring without complying with formal procedures prescribed by law, is not an adoption.

In our opinion Article 13 merely imposes on foster parents and foster children certain obligations which parents and their children have, but it does not thereby create a relationship equivalent to adoption. We conclude that the petitioner has not borne the burden of establishing that a legal adoption within the meaning of section 101(b)(1)(E) has been effected, and we dismiss this appeal.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.