MATTER OF YEE

In Visa Petition Proceedings

A-19428311

*Decided by Board April 28, 1972*

Petitioner's adoption of beneficary in mainland China subsequent to 1950 (in 1956) by written agreement of adoption which was examined and approved by an agency of the Government of the People's Republic of China is a valid adoption for immigration purposes, since new evidence indicates that Article 13 of the Marriage Law of the People's Republic of China relates to adoptive relationships; that the courts of the People's Republic of China have recognized the existence of adoptive relationships; and that the procedure for effecting adoption has been adequately spelled out in court decisions and other legal writings. [*Matter of Yee*, 13 I. & N. Dec. 620, overruled.]

ON BEHALF OF PETITIONER:
Benjamin Gim, Esquire
217 Park Row
New York, New York 10038
(Brief filed)

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney
(Brief filed)

The lawful permanent resident alien petitioner applied for preference status for the beneficiary as his adopted son under section 203(a)(2) of the Immigration and Nationality Act. The District Director, on October 14, 1970, found that an adoption had been established and approved the petition. However, his initial approval was revoked on September 30, 1971, on the basis of this Board's decision in the case of another Chinese with the same family name, *Matter of Yee*, 13 I. & N. Dec. 620 (BIA, 1970). From the revocation the petitioner appeals. His appeal will be sustained.

The beneficiary was born in the People's Republic of China on August 22, 1955. The record indicates that he was adopted in Canton on January 31, 1956. The file contains a copy of a document signed by the natural parents entitled "Deed on Giving Own Son Away to Other Persons for Adoption." A translation of it reads as follows:

We, Moy Sam Nui and Chew Hon You, the undersigned, residing at No. 10, Chou Yuet Lane, Canton City, Residence I.D. Card Nos. 2283737 and 1307540, due to poverty and having too many children to take care of, have agreed to

132

give our own baby child, Moy Hor Foo, to our friend, Yee Ken Kee, as his adopted child. A mutual agreement has been filed with the Community Office and the Police. This child's birth certificate, No. 5518, has also been given to Mr. Yee Ken Kee and a new name has been given to the child. From this date on, this child will be under the care of Mr. Yee, and we will have no rights whatsoever to claim him back.

The adoption was registered with the local civil authorities on January 31, 1956. The file contains a translation of an instrument styled "A Guaranty on Children Adoption." It was signed by both natural parents and was endorsed by The People's Committee, North District of Canton. Although the adoption agreement only mentioned the petitioner as the adoptive parent, the "Guaranty" mentions both him and his spouse as the "receivers."

Foreign law is a matter of fact which, like any other fact, must be established by evidence. In *Matter of Yee, supra,* we found, on the basis of the evidentiary material presented to us, that the Civil Code of the Nationalist Republic had been suspended when the Chinese Communist Government seized control of the mainland of China in 1950. We also found that the People's Republic of China had not enacted any adoption law and that there was no evidence of any intention to revert to traditional Chinese custom and practice with respect to adoption. The actual legal basis for our decision in that case revolved around our construction of Article 13 of the Marriage Law of the People's Republic of China. We held (1) that Article 13 related only to foster children and not to adopted children, and (2) that even if it did relate to adopted children, it did not outline a procedure for effecting adoptions.

Our decision in *Matter of Yee, supra,* was founded upon an opinion prepared by the Far Eastern Law Division of the Library of Congress, which observed that the People's Republic of China had not yet promulgated a statute governing adoption. The opinion quoted a 1952 Peking translation of Article 13 of the Marriage Law which interpreted the Chinese characters "yang tzu nü" to mean "foster children."

Counsel maintains that a subsequent opinion from the Far Eastern Law Division of the Library of Congress and other legal materials not previously available tend to indicate that our holding in *Matter of Yee, supra,* was incorrect. He contends that (1) Article 13 of the Marriage Law does relate to adoptive relationships, (2) the courts of the People's Republic of China have recognized the existence of adoptive relationships, and (3) the procedure for effecting adoptions has been adequately spelled out in court decisions and other legal writings.

We have received a new memorandum from the Chief of the Far Eastern Law Division of the Library of Congress, dated January

133

19, 1972, which apparently supersedes the opinion referred to above. It concludes that the Chinese characters "yang tzu nü" appearing in Article 13 of the Marriage Law should properly be translated as "adopted children," and not as "foster children." This new opinion also contains translations of a number of court decisions and legal writings emanating from the People's Republic of China.[1] This evidence supports the three contentions of counsel listed above. We agree that the new evidence now made available to us requires a change in the conclusion we had reached in *Matter of Yee, supra.*

In the present case a valid adoption was initially established to the satisfaction of the District Director. There is no dispute as to the facts surrounding the adoption. The approval of the District Director was subsequently revoked on the basis of our decision in *Matter of Yee, supra.* Inasmuch as we have receded from our decision in that case, it no longer serves as a bar to the approval of the present petition.

In the present case we find that (1) a written agreement of adoption has been presented, and (2) the adoption was examined and approved by an agency of the government of the People's Republic of China. Accordingly, we find that the beneficiary qualifies as an adopted child for purposes of section 101(b)(1)(E). He, therefore, is entitled to preference classification under section 203(a)(2), having met all the other requirements. The approval of the application for preference status was incorrectly revoked and should be reinstated. The appeal will be sustained and the following order will be entered.

ORDER: It is ordered that the District Director's revocation of the approval of the petition granting preference classification to the beneficiary be and the same is hereby set aside, and the approval of the petition granting preference classification be and the same is hereby reinstated as of the date of original approval.

---

[1] Some of the new sources which are cited by the Library of Congress, and which we have carefully considered in reaching our conclusion, are the following:

a. *Marriage Law and Policy in the Chinese People's Republic* by M. J. Meijer (Hong Kong University Press, 1971).

b. An undated document entitled "Several Opinions Concerning Questions of Adoption Relationships Expressed by the Supreme People's Court of the Central People's Government."

c. An editorial entitled "Several Questions Concerning Adoption," appearing in *Chinese Law and Government: A Journal of Translations*, Vol. II, No. 1 (Spring 1969).

d. An article entitled "General Discussion of the Marriage Law of the People's Republic of China," by Ma Ch'i, *Tung pei jen min ta hsüeh jen wen k'o hsüeh pao* (Academic Journal of the Humanistic Sciences of Northeastern People's University), No. 3 (1956).