MATTER OF MAY

In Visa Petition Proceedings

A-24967547

*Decided by Board April 26, 1983*

The Board of Immigration Appeals adopts the State Department assessment of the reliability of certificates issued by Notarial Offices in the People's Republic of China set forth in the State Department Foreign Affairs Manual as revised on July 9, 1982, which states, *inter alia*, that such certificates are issued on the basis of primary documentation submitted by the applicant or as a result of an investigation by notarial office staff and while generally reliable, are best used in conjunction with other supporting evidence. *Matter of Cheung*, 17 I&N Dec. 365 (BIA 1980), and *Matter of Lau*, 16 I&N Dec. 115 (BIA 1976), modified.

ON BEHALF OF PETITIONER: Edward Jew, Esquire
950 Stockton Street, Suite 200
San Francisco, California 94108

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated September 1, 1982, the District Director denied the visa petition filed by the United States citizen petitioner to accord the beneficiary preference status as his sister pursuant to section 203(a)(5) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(5). The petitioner has appealed from that decision. The record will be remanded to the District Director.

In order to support a claimed sibling relationship under section 203(a)(5) of the Act, the petitioner must establish that he and the beneficiary once qualified as the "children" of a common "parent" as those terms are defined by sections 101(b)(1) and (2) of the Act, 8 U.S.C. 1101(b)(1) and (2). *Matter of Gonzalez*, 17 I&N Dec. 236 (BIA 1980). The petitioner maintains that he and the beneficiary are offspring of the same parents. In support of his petition, the petitioner submitted, *inter alia*, a certificate of family relationship that was issued on December 10, 1979, a birth certificate relating to the beneficiary that was also issued on December 10, 1979, and a birth certificate relating to the petitioner that was issued on April 8, 1982. Each of those documents was issued by the Notarial Office, Guangdong Province, People's Republic of China, and each reflects that the petitioner and the beneficiary were born to the

381

same mother and father.

The District Director denied the visa petition for failure on the part of the petitioner to satisfy his burden under *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966), of establishing that a brother-sister relationship exists between him and the beneficiary. Citing *Matter of Cheung*, 17 I&N Dec. 365 (BIA 1980), the District Director determined that little weight could be assigned to the birth and family relationship certificates provided by the petitioner. In *Matter of Cheung, id.*, the Board concluded that a certificate of family relationship issued by authorities of the People's Republic of China was of extremely limited probative value where, as here, the document was recently issued (*i.e.*, not issued contemporaneously with the events described), was silent as to the source of the information provided, and the petitioner had failed to establish that it was issued after reference to official records or to a reliable, independent source. *See also Matter of Lau*, 16 I&N Dec. 115 (BIA 1976).

On appeal, the petitioner, through counsel, urges that we reconsider our position with respect to the evidentiary value properly accorded official documents issued in the People's Republic of China. We find such reevaluation appropriate in light of information originating since our decisions in *Matter of Cheung* and *Matter of Lau, supra*. To the extent any conflict exists between our decisions in those cases and our present holding,[1] *Matter of Cheung* and *Matter of Lau*, are herewith modified.

On July 9, 1982, the section relating to the People's Republic of China in Appendix B of the State Department's Foreign Affairs Manual, which is used by the Immigration and Naturalization Service to determine the availability of foreign documents,[2] was extensively revised in a manner responsive to the concerns we voiced in *Matter of Cheung* and *Matter of Lau*, at least with respect to documents issued by China's Notarial Offices. That section, as revised, provides in pertinent part:

CHINA, PEOPLE'S REPUBLIC OF

DOCUMENTS:

> Most of the documents listed below will be obtained from one of China's Notarial Offices (Gong Zheng Chu). Notarial Offices are sited in most large Chinese cities and also in rural county seats. Notarial Offices are part of the Ministry of Justice structure, and as such are separate from the People's Court system.

---

[1] *Matter of Lau, supra*, involved a notarial certificate offered as proof of a Chinese adoption. The document in question in *Matter of Cheung, supra*, an "Official Certification of Family Relationship," was issued by the People's Court of a local district while the documents here at issue, like the certificate in *Matter of Lau*, emanated from one of China's Notarial Offices. The probative value of documents issued by the People's Courts is a question not presently before us.

[2] See Immigration and Naturalization Service Operations Instruction 204.2a.

Notaries in China do not perform the same function as their American counterparts. Chinese notaries affix their signatures and office seal to certificates which attest to the probity of claims made by the applicants. There is no manner of oath taking involved, but the notary is empowered to issue a certificate only if he concludes that the alleged facts are true. Notaries issue these certificates based either on primary documentation submitted by the applicant or as the result of an investigation conducted by notarial office staff. Notarial certificates are generally reliable but are best used in conjunction with other supporting evidence. The certificate's source of information does not appear on the certificate itself. Chinese authorities advise that documents issued by commune, brigade, or work unit officials are not to be accepted in lieu of notarial certificates.

. . . .

BIRTH, MARRIAGE AND DEATH CERTIFICATES: Available. Chinese citizens may apply for such documents at their local notarial office. Issuance of these certificates takes from a few days to several weeks, depending on whether the notary conducts an investigation. The basic issuance fee is five yuan per document, although this may increase if an investigation is necessary.

. . . .

See Vol. 9, Foreign Affairs Manual, Appendix B, "China, People's Republic of."

We adopt the foregoing State Department assessment of the reliability of documents issued by China's Notarial Offices and shall remand the record to the District Director for reconsideration of his decision in light thereof. By the terms of that assessment, such notarial certificates should not be regarded as conclusive proof of the facts recited. Rather, the notarial certificates should be accompanied by any and all supporting evidence that the petitioner may be able to produce. Ultimately, each case must be decided on its own facts with regard to the sufficiency of the evidence provided. Cf. Matter of Serna, 16 I&N Dec. 643 (BIA 1978).

In denying the visa petition in this case, the District Director referred to a sworn statement allegedly made by the petitioner on January 17, 1961, in which he asserted that he was an only child. The petitioner insists that the District Director erroneously attributed to him a statement made by another alien with a similar name but different alien number, birthday, and family history. This matter should be resolved on remand.

Finally, the petitioner has submitted additional material evidence on appeal which should be considered by the District Director along with any further evidence the petitioner or the Government may wish to present. The District Director should thereupon enter a new decision in the case. In the event the decision on remand is again adverse to the petitioner, we direct that the case be certified back to the Board for review.

ORDER: The record is remanded to the District Director for further proceedings consistent with the foregoing opinion and for the entry

of a new decision.

**FURTHER ORDER.** Should the decision on remand again be adverse to the petitioner, the record shall be certified back to the Board for review.