## MATTER OF CHU

## In Visa Petition Proceedings

## A-24303227

## *Decided by Board May 3, 1984*

(1) Certificates issued by notarial offices in the People's Republic of China ("PRC") which are offered as proof of post-1950 adoptions in mainland China shall be accepted as evidence both that the adoptive relationship was created and that the adoption is regarded as valid by the PRC Government. *Matter of May,* 18 I&N Dec. 381 (BIA 1983), distinguished. *Matter of Ho,* 18 I&N Dec. 152 (BIA 1981), superseded.

(2) A certificate issued by one of the PRC's notarial offices is an essential element of proof in establishing the existence of a valid post-1950 adoption in the PRC in that if an applicant for such certificate is unable to persuade notarial officials that the certificate should be issued, either because of questions relating to the establishment of the adoption or its conformance to PRC public policy, then he cannot satisfy his burden of proving that the claimed relationship exists for purposes of our immigration laws.

(3) Certificates issued by notarial offices in the PRC shall not be regarded as conclusive proof of the facts certified because of the potential for fraud or error in their issuance: fraud or mistake may reasonably be suspected where the facts recited on the notarial certificate are contradicted by other evidence and the inconsistencies have not been satisfactorily explained by the petitioner or where there is an absence of sufficient corroborating evidence.

ON BEHALF OF PETITIONER:  
Jim Tom Haynes, Esquire  
1140 Connecticut Avenue, N.W.  
Washington, D.C. 20036

ON BEHALF OF SERVICE:  
Eloise Rosas  
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated August 26, 1983, the district director denied the visa petition filed by the lawful permanent resident petitioner to accord the beneficiary preference status as an adopted daughter pursuant to section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2) (1982). The petitioner appealed from that decision and oral argument in the case was heard by the Board on

December 22, 1983. The record will be remanded to the district director.

The beneficiary is a 14-year-old native and citizen of the People's Republic of China ("PRC"). The petitioner, also a native of the PRC, claims to have adopted the beneficiary in 1975 when the beneficiary was 6 years of age. In support of her visa petition, the petitioner submitted certificates issued by one of China's notarial offices which state that the beneficiary is the adopted daughter of the petitioner and her husband, the adoption having taken place in the PRC on October 2, 1975.

The district director denied the visa petition for failure on the part of the petitioner to establish the existence of the claimed relationship between herself and the beneficiary. The district director noted that on documents executed in connection with her own immigration to the United States in 1979, the petitioner had declared only her natural children and had made no mention of the beneficiary. The district director also relied upon a memorandum from the American consulate general at Guangzhou, the State Department consular district in which the beneficiary resides, which was prepared in response to a request the district director had made for an overseas opinion as to the validity of the adoption. The State Department memorandum, dated July 28, 1982, expresses the view that the visa petition should not be approved: the memorandum advises that notarial certificates such as those submitted by the petitioner carry some weight but, standing alone, do not establish that a legal adoption has taken place, particularly where they are contradicted by other evidence such as the petitioner's past failure to acknowledge the beneficiary as her daughter. Appended to the memorandum is an airgram that discusses post-1950 adoptions in the PRC which the consulate at Guangzhou had previously, on August 19, 1981, directed to various State Department and Immigration and Naturalization Service offices.

At issue in this case is the evidence required to substantiate a claimed adoption created after the Civil Code of China was suspended in 1950 by the Communist Chinese Government which had seized control of the mainland of China. An adoption that is valid under the law of the place where it occurred will be recognized as valid for purposes of our immigration laws. *Matter of Kwok*, 14 I&N Dec. 127 (BIA 1972); *Matter of R-*, 6 I&N Dec. 760 (BIA 1955). It is settled that adoptive relationships created after the Communist Chinese Government came to power are recognized in the

PRC. *Matter of Yee*, 14 I&N Dec. 132 (BIA 1972); *see also Matter of* *Ho*, 18 I&N Dec. 152 (BIA 1981), and addendum.[1]

However, as we noted in *Matter of Ho, supra*, the Communist government has to date promulgated no specific procedural or substantive requirements for creating an adoption to replace the suspended Civil Code of China.[2] Any "requirements" for adoption are apparently derived from policy considerations, rather than from pre-existing statutory criteria, and the legitimacy of the adoption is evaluated in terms of whether the adoption violates a known law or important policy. *Matter of Ho, supra*, and addendum. The interests of the child and the society at large are relevant. PRC authorities might decline to recognize the validity of an adoption where, for example, the adopted child had been sold to the adopter for the purpose of performing labor or where a peasant child has been adopted by an urban family in contravention of the policy of discouraging population shifts from rural areas into the cities. *Id.*

The precise question before us, which was raised but not resolved in *Matter of Ho, supra*, may be stated as follows: In the absence of any clear procedural or substantive standards against which to measure a post-1950 adoption in mainland China, what evidence, if any, will suffice to establish that the adoption is recognized as valid by the PRC Government?

The Board recently considered the evidentiary value to be accorded certificates issued, as were those submitted by the petitioner in support of her visa petition, by notarial offices in the PRC. *Matter of May*, 18 I&N Dec. 381 (BIA 1983). We adopted the State

---

[1] Article 13 of the 1950 Marriage Law of the PRC provided:

Parents have the duty to rear and to educate their children; the children have the duty to support and to assist their parents. Neither the parents nor the children shall maltreat or desert one another.

The foregoing provision also applies to foster-parents and foster-children. Infanticide by drowning and similar criminal acts are strictly prohibited.

Article 20 of the 1980 Marriage Law, which superseded the 1950 Marriage Law, provides:

The state protects lawful adoption. The relevant provisions in this law governing the relations between parents and children are applicable to the rights and duties in the relations between foster-parents and their foster-children.

The rights and duties in the relations between foster-children and their natural parents are terminated on the establishment of relationship of adoption.

The term "foster" has been held to mean legally binding adoptive relationships. *Matter of Yee, supra*. For further discussion, see June 4, 1981, report of the Far Eastern Law Division of the Library of Congress, appended to *Matter of Ho, supra*, entitled "Adoption in the People's Republic of China."

[2] The Board in *Matter of Ho, supra*, retreated from the contrary position taken in *Matter of Yee, supra*, in which we held that procedures for effecting adoptions in the PRC had been adequately spelled out.

Department assessment of the reliability of such certificates as set forth in the Department's newly revised Foreign Affairs Manual ("FAM"). Vol. 9, Foreign Affairs Manual, Part IV, Appendix B/C/ E, "China, People's Republic of," as revised on July 9, 1982 (*see* Appendix).[3] In the revised FAM, the State Department concluded that notarial certificates are generally reliable, noting that a PRC notary official is empowered to issue a certificate only if he finds that the alleged facts are true and he issues the certificate based either upon primary documentation submitted by the applicant or as a result of an investigation conducted by notarial office staff, but cautioned that the certificates are best used in conjunction with other supporting evidence. *Id.*

We do not consider *Matter of May, supra,* dispositive in the instant case. *Matter of May* may stand as authority for the weight to be given notarial certificates as evidence that an adoption occurred and exists as a social fact. However, *May,* which involved a blood rather than an adoptive relationship, did not address the question whether notarial certificates constitute evidence that an adoption would be recognized as valid in the PRC.

The Foreign Affairs Manual upon which *May* relies sheds some light on the matter. The revised FAM added a section which deals specifically with adoptions in the PRC. That section, a subcategory under the general discussion of the powers and obligations of notarial officials (*see* Appendix), states in pertinent part:

> *ADOPTION CERTIFICATES*: Available. Court ordered adoption does not exist as such in the PRC. Commonly, adoptions are orally agreed to by the natural and adoptive parent(s), so often there is no written record. Parties to the adoption, however, may secure notarial certificates at a later point in time which will list the natural parents' name, adoptive parents' names, and the date of adoption. The certificates do not confirm the legality of the adoption as such, since there are few specific laws which regulate the adoption process in the PRC. *But a notary will issue a certificate only after ascertaining that an actual adoption, conforming to local practice and regulation, took place.*

Foreign Affairs Manual as revised on July 9, 1982, *supra* (emphasis added).

The August 1981 airgram that was prepared by the American consulate general at Guangzhou, which the consulate transmitted with its memorandum to the district director, discusses the consulate's experience with notarial certificates offered as proof of post-

---

[3] The Foreign Affairs Manual relating to the PRC was again revised on July 1, 1983, to reflect full availability of police records, a matter not relevant to our decisions in *Matter of May, supra,* and the instant case.

1950 adoptions in mainland China.[4] It is the consulate's position that certificates issued by notarial offices in the PRC, while not infallible, "are the best evidence available that the Chinese authorities recognize the existence of an adoption." The airgram goes on to state that such certificates should always be required: where the adoptive parents are unsuccessful in obtaining a certificate from the notarial office, it may safely be concluded, in the judgment of the consulate, "that the claimed adoption is invalid in the eyes [of] the Chinese government."

In light of the information provided in the FAM as revised in July 1982 and the comments of the American consulate general at Guangzhou, we shall, in post-1950 adoption cases, accept certificates issued by China's notarial offices as evidence both that an adoptive relationship was created and that the adoption is regarded as valid by the PRC Government. Like the consulate general, we consider the notarial certificate to be an essential element of proof in substantiating the claimed adoption. As noted earlier, notarial certificates may be issued some time after the adoption took place on the basis of evidence provided by the applicant and/or an investigation conducted by notarial staff. If the applicant is unable to persuade notarial officials that the certificate should be issued, either because of questions relating to the establishment of the adoption or its conformance to PRC public policy, he cannot, in our opinion, satisfy his burden of proving that the claimed relationship exists for purposes of our immigration laws.

We do not, however, view notarial certificates as conclusive proof of the facts certified because of the potential for fraud or error in their issuance.[5] Cf. Matter of Serna, 16 I&N Dec. 643 (BIA 1978). It is reasonable to suspect fraud or mistake where the facts recited on the notarial certificate are contradicted by other evidence of record and the inconsistencies have not been satisfactorily explained by the petitioner. The reliability of the notarial certificate will like-

---

[4] The airgram confirms the fact that there is no legally or administratively defined procedure for adoption in the PRC. It reports that while legal writings do exist, those writings have had no impact on the manner in which adoptions are actually effected but instead represent only a statement of preference of the scholars who authored them as to how adoptions should be carried out. The airgram further states that Chinese courts are not normally involved in the adoption process and that a judicial decision in a particular case is in any event not binding on other courts since there is no concept of judicial precedence in the Chinese court system.

[5] Once a visa petition has been approved, an alien must still convince the consular officer in the field that he or she is entitled to the status approved, 22 C.F.R. § 42.43(a)(1) (1984), and is eligible in all respects to receive a visa, 22 C.F.R. § 42.40 (1984). See generally Study, Consular Discretion in the Immigrant Visa-Issuing Process, 16 San Diego L. Rev. 87 (1978).

wise be called into question by an absence of sufficient corroborating evidence. Such corroborating evidence presumably supported the request for a notarial certificate and ought to be available wherever a bona fide parent-child relationship exists between a petitioner and a beneficiary.

Any and all evidence available to the petitioner in addition to the notarial certificate which bears upon the fact and the legitimacy of the adoption should accompany the visa petition. Such evidence might include a household register entry in which the name of the adopted child has been transferred to the household register of the adoptive parents; a record of the adoption made at the time of adoption, if such record exists; certificates issued by a brigade, commune, or other local unit;[6] affidavits attesting to the adoption which specify the nature of the affiant's relationship to the parties, the basis of the affiant's knowledge, and the facts known to the affiant about the adoption; photographs taken over the years of the adoptive parents and adopted child; correspondence between the adopted child and adoptive parents; and evidence of financial support. As we observed in *Matter of May, supra,* each case will ultimately be decided on its own facts with regard to the sufficiency of the evidence presented by the petitioner in support of the visa petition.[7]

The petitioner in the instant case has submitted additional evidence on appeal consisting of affidavits which include the petitioner's own sworn statement explaining in detail the circumstances surrounding her adoption of the beneficiary and her failure to mention the beneficiary on earlier applications and declarations and an affidavit executed by the petitioner's daughter-in-law claiming to have been present at a ceremony marking the adoption on October 2, 1975; letters from the beneficiary to the petitioner and her husband; and receipts allegedly evidencing money sent to the beneficiary by the petitioner and her husband following the peti-

---

[6] We note once again that household register entries, written adoption agreements of any kind, and documents issued by local governmental or work units, like the notarial office certificates themselves, are evidence of, not procedural requirements for, adoption in the PRC. *See Matter of Ho supra,* and addendum.

[7] In *Matter of Ho, supra,* we suggested that the evidence submitted by the petitioner, which included at least one notarial certificate that was supported by additional corroborating evidence and was not contradicted by other evidence, was insufficient to prove the claimed adoption. However, *Ho* was decided before the State Department Foreign Affairs Manual was revised to provide guidance with regard to the probative value properly accorded certificates issued by China's notary offices. Our decision in the instant case supersedes *Matter of Ho, supra.*

tioner's immigration to the United States.[8] We believe a remand is appropriate to permit the district director to reconsider his decision in light of the foregoing discussion and the new evidence presented. The petitioner and the Government should be given an opportunity on remand to offer any additional evidence they may wish to submit or the district director may request. The burden of establishing that a valid adoptive relationship was created between the petitioner and the beneficiary that also satisfies the requirements of section 101(b)(1)(E) of the Act, 8 U.S.C. § 1101(b)(1)(E) (1982), remains with the petitioner on remand. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

ORDER: The record is remanded to the district director for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

## APPENDIX

### Vol. 9, Foreign Affairs Manual, Part IV, Appendix B/C/E

### CHINA, PEOPLE'S REPUBLIC OF

DOCUMENTS:

Most of the documents listed below will be obtained from one of China's Notarial Offices (Gong Zheng Chu). Notarial Offices are sited in most large Chinese cities and also in rural county seats. Notarial Offices are part of the Ministry of Justice structure, and as such are separate from the People's Court system.

Notaries in China do not perform the same function as their American counterparts. Chinese notaries affix their signatures and office seal to certificates which attest to the probity of claims made by the applicants. There is no manner of oath taking involved, but the notary is empowered to issue a certificate only if he concludes that the alleged facts are true. Notaries issue these certificates based either on primary documentation submitted by the applicant or as the result of an investigation conducted by notarial office staff. Notarial certificates are generally reliable but are best used in conjunction with other supporting evidence. The certificate's source of information does not appear on the certificate itself. Chinese authorities advise that documents issued by commune, bri-

---

[8] Although the name of the petitioner's husband appears as remitter on the receipts, the name of the payee has not been translated from Chinese into English.

gade, or work unit officials are not to be accepted in lieu of notarial certificates.

Individuals living outside of China may obtain notarial certificates from the notarial office with jurisdiction over the county of previous residence. Chinese relatives or friends may request issuance of certificates on behalf of someone now living abroad. Alternatively, persons in need of these documents may contact the PRC Embassy or Consulate nearest to their residence abroad and ask that the request be forwarded to the appropriate notarial office. The fee for issuance of these documents to persons abroad is twice what normally would be charged to a resident Chinese citizen, and will total 28 Renminbi (approx. $15US) for one original, one copy, plus translation into English.

*POLICE RECORD*: Currently available only for present or former residents of Guangdong and Fujian provinces. Persons should make application for a Certificate of No Criminal Record at their local notarial office. Persons without a criminal record will be able to obtain a certificate to that effect. Certificates for individuals with one or more criminal convictions will list all convictions for which local records are still extant. The certificates purport to reflect all criminal convictions during residence in China, but in fact show only those sentences passed by the courts or administrative organs of Guangdong and Fujian respectively.

According to a 1957 State Council ruling which is still in force, the imposition of a reeducation through labor (Lao Dong Jiao Yu) term does not result from a criminal conviction. Administrative organs, rather than the courts, are empowered to assign individuals to a reeducation through labor program. It is important to distinguish reeducation through labor from labor reform (Lao Dong Gai Zao), which is a sentence meted out for criminal offenses.

*PRISON RECORD*: See Court Records below.

*MILITARY RECORD*: Unavailable.

*BIRTH, MARRIAGE AND DEATH CERTIFICATES*: Available. Chinese citizens may apply for such documents at their local notarial office. Issuance of these certificates takes from a few days to several weeks, depending on whether the notary conducts an investigation. The basic issuance fee is five yuan per document, although this may increase if an investigation is necessary.

*DIVORCE DECREE*: Available in two forms. A party to a divorce case will receive a copy of the formal divorce decree from the court at the time the divorce is approved. If the original decree is lost, the same court will often issue a duplicate. In addition, the notarial office will issue a certificate based on extant records to confirm a court-decreed divorce.

88

*ADOPTION CERTIFICATES*: Available. Court ordered adoption does not exist as such in the PRC. Commonly, adoptions are orally agreed to by the natural and adoptive parent(s), so often there is no written record. Parties to the adoption, however, may secure notarial certificates at a later point in time which will list the natural parents' name, adoptive parents' names, and the date of adoption. The certificates do not confirm the legality of the adoption as such, since there are few specific laws which regulate the adoption process in the PRC. But a notary will issue a certificate only after ascertaining that an actual adoption, conforming to local practice and regulation, took place.

A written record dating from the time of adoption should be available, however, in the case of an adoption of an orphan. The adoption of a parentless child who becomes a ward of the Chinese State, must be approved by the Ministry of Civil Affairs.

*COURT RECORDS*: Available in most cases. Normally, when someone is tried by a People's Court or by an organ of the Executive branch of government, some record remains of the case even for a political crime. In some instances, the entire formal court verdict (Pan Jue Shu) is available upon request by the former defendant. In other cases, the court can provide only a synopsis of the charges and the verdict. In all instances, it is preferable to have the applicant himself request these records. If he is unable to do so, however, AmEmbassy Beijing or the Consulates General at Guangzhou and Shanghai will, upon request, contact the appropriate provincial Foreign Affairs Office and ask for help in obtaining release of the records. It is not advisable for other U.S. officials to contact the courts directly. Most court records will also indicate the actual sentence served and any subsequent lightening or commuting of the original sentence.

(Entire section amended)